## UNITED STATES *v.* DICKERSON.

No. 705.   Argued April 26, 1940.—Decided May 27, 1940.

*Assistant Attorney General Shea,* with whom *Solicitor General Biddle* and *Messrs. Melvin H. Siegel* and *Paul A. Sweeney* were on the brief, for the United States.

*Mr. Herman J. Galloway,* with whom *Messrs. George R. Shields, John W. Gaskins,* and *Fred W. Shields* were on the brief, for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

The question is whether respondent, Dickerson, may recover a judgment against the United States upon a cause of action founded upon § 9 of the Act of June 10, 1922, c. 212, 42 Stat. 625, 629–630.

Section 9 provides that after the 1st of July, 1922, an enlistment allowance shall be paid "to every honorably

discharged enlisted man . . . who re-enlists within a period of three months from the date of his discharge." Respondent, who was honorably discharged upon the termination of an enlisted period ending on the 21st of July, 1938, re-enlisted on the following day, the 22nd, for a period of three years, but was not paid an enlistment allowance. He thereupon brought this action in the Court of Claims. It is conceded that § 9, if not repealed or suspended at the date of his re-enlistment, would entitle him to the sum of seventy-five dollars.

The Government opposed the action before the Court of Claims on the ground that § 402 of Public Resolution No. 122, June 21, 1938, c. 554, 52 Stat. 809, 818–819, suspended the allowance for re-enlistment during the fiscal year ending June 30, 1939. Section 402 contains a proviso, appended to an appropriation for the Rural Electrification Administration, that "no part of any appropriation contained in this or any other Act for the fiscal year ending June 30, 1939, shall be available for the payment" of any enlistment allowance for "re-enlistments made during the fiscal year ending June 30, 1939, notwithstanding the applicable portions of sections 9 and 10" of the Act of June 10, 1922.

The Court of Claims entered judgment for respondent on the ground that § 402, while it restricted the funds available for payment of the allowance, did not suspend or repeal § 9. 89 Ct. Cls. 520. Because of the importance of the issue in the administration of the revenues, we granted certiorari. 309 U. S. 647.

There can be no doubt that Congress could suspend or repeal the authorization contained in § 9; and it could accomplish its purpose by an amendment to an appropriation bill, or otherwise. *United States* v. *Mitchell,* 109 U. S. 146, 150; *Mathews* v. *United States,* 123 U. S. 182; *Dunwoody* v. *United States,* 143 U. S. 578; *Belknap*

v. *United States,* 150 U. S. 588, 593; *United States* v. *Vulte,* 233 U. S. 509, 515.   See *United States v. Langston,* 118 U. S. 389.   The question remains whether it did so during the fiscal year ending on the 30th of June, 1939.

Section 9 remained in full force and effect during the eleven fiscal years ending on the 30th of June, 1923 to 1933, after which date it was suspended during the ensuing four fiscal years by a provision inserted in various appropriation acts.   Section 18 of the Economy Act of March 3, 1933, c. 212, 47 Stat. 1489, 1519, provided that "So much of sections 9 and 10 of the Act . . . approved June 10, 1922 . . . as provides for the payment of enlistment allowances to enlisted men for re-enlistment within a period of three months from date of discharge is hereby suspended as to re-enlistments made during the fiscal year ending June 30, 1934."   This provision, which concededly suspended the authorization for the enlistment allowance, was continued in full force and effect for the fiscal years ending on the 30th of June, 1935, 1936 and 1937, by its insertion in the Economy Provisions of the Independent Offices Appropriation Act for the fiscal year 1935 and in the Treasury-Post Office Appropriation Acts for the fiscal years 1936 and 1937.[1]

The Second Deficiency Appropriation Bill of May 28, 1937, c. 277, 50 Stat. 213, 232, also contained a provision affecting the enlistment allowance, but the form of words used was changed.   That Act as passed by Congress provided that "no part of any appropriation contained in this or any other Act for the fiscal year ending June 30, 1938, shall be available for the payment of enlistment allowance to enlisted men for re-enlistment within a period of three months from date of discharge as to re-enlistments

---

[1] c. 102, 48 Stat. 509, 523; c. 110, 49 Stat. 218, 226–227; c. 725, 49 Stat. 1827, 1837.

made during the fiscal year ending June 30, 1938, notwithstanding the applicable provisions of sections 9 and 10 of the Act" approved June 10, 1922. The identical provision, with the exception of the dates, was appended as a proviso to § 402 of Public Resolution 122, copied above, and was made applicable during the fiscal year ending on the 30th of June, 1939.

The provision inserted in the Second Deficiency Appropriation Bill for 1937 was introduced on the floor of the Senate as an amendment by Senator Byrnes. In response to questions concerning the amendment, the Senator stated (81 Cong. Rec. 4426):

". . . the language of the amendment has been carried ordinarily in the Treasury and Post Office Appropriation Bill, but was not carried in that appropriation bill this year, and is therefore proposed to be included in the bill now before us.

.　　　.　　　.　　　.

The effect of it is simply to carry the same limitation that has been carried for years in the appropriation bills.

.　　　.　　　.　　　.

Its purpose is to continue the appropriation situation that has existed for years, so that no bounty shall be paid for re-enlistment in the military and other uniformed services."

The amendment was thereupon adopted in the Senate without recorded opposition, and was sent to conference. The House managers, in reporting the amendment to the House, described it as "Continuing during the fiscal year 1938 the suspension of the re-enlistment gratuity for enlisted personnel of the Army, Navy, Marine Corps, and Coast Guard." 81 Cong. Rec. 5084. The course of the debate amply discloses that the House regarded the amendment as continuing during the fiscal year 1938 the same restriction on the enlistment allowance as the pro-

vision inserted in earlier appropriation bills.[2] It was then adopted by the House. 81 Cong. Rec. 5091.

The identical provision (except as to the dates), eventually appended to § 402 of Public Resolution 122, was

[2] Mr. Scott, one of the chief speakers against the amendment, stated (81 Cong. Rec. 5089): "In 1933 an amendment went into the Treasury-Post Office appropriation bill taking away or suspending this re-enlistment bonus. . . . The provision was continued by inserting it in the Treasury-Post Office appropriation bill each year from 1933 until this year. It was in the Treasury-Post Office appropriation bill that was brought into the House for consideration this year. I raised a point of order against the provision on the ground it was legislation on an appropriation bill, and that it did not come under the Holman rule. The Chairman of the Committee sustained the point of order.

"The bill went to the Senate and the suspension was not placed in the bill. The second deficiency appropriation bill passed the House and went over to the Senate. This amendment was placed in there. It was clearly subject to a point of order in the Senate, but the point was not made against it.

"It now comes back to the House for a separate vote as an amendment. If we vote for this amendment it means the further suspension of the re-enlistment bonus to the enlisted personnel of the Army, Navy, Marine Corps, Coast and Geodetic Survey, and Coast Guard."

Mr. Woodrum, who took charge of explaining the Conference Report to the House, stated (81 Cong. Rec. 5090): "In the first place, I wish to emphasize the fact that the language in the amendment only asks to continue this legislation for the fiscal year 1938. . . . We ask in this amendment that during the next fiscal year this re-enlistment bonus be not allowed; and I may say, Mr. Speaker, this is not taking one solitary thing away from any enlisted man in the Army, Navy, or Marine Corps. He is getting exactly the pay that was promised him, and every member of the Army, the Navy, and the Marine Corps who enlisted during the last 3 years enlisted with the knowledge there was no re-enlistment bonus going to be paid to him if he did re-enlist.

". . . they know now what they knew when they re-enlisted, that the time has not yet come when the Congress can offer a bonus to people working for the Government."

introduced as an amendment to the Second Deficiency Appropriation Bill for the fiscal year 1938 (H. R. 10851, 75th Cong., 3d Sess.), then pending in the House. 83 Cong. Rec. 8522–8569. A point of order was made against the amendment on the ground that it was legislation in an appropriation bill; Representative Woodrum, who had charge of the amendment, admitted that the point of order was good, and the Chair sustained it. 83 Cong. Rec. 8567. The amendment was then offered in the Senate, where the Presiding Officer also sustained a point of order that it was legislation in an appropriation bill.[3] 83 Cong. Rec. 9189.

---

[3] Senator Byrnes, who had offered the amendment on behalf of the Appropriations Committee, then engaged in the following colloquy with Senator Walsh (83 Cong. Rec. 9189–9190):

Mr. BYRNES. . . . I will say to the Senator from Massachusetts, in the light of the ruling of the Chair, that before the Congress adjourns I shall certainly make an effort to do something to bring about a change, so that there will not be dissatisfaction among the various services. If the bounties were all restored, millions of dollars would be involved.

Mr. WALSH. Is not the situation that under existing law there is now an authorization of funds to be paid to those who re-enlist in the Army, Navy, Marine Corps, and Public Health Service? Is not that the situation?

Mr. BYRNES. There is authority to pay the bounty. It has not been paid for 6 years.

Mr. WALSH. No funds are available.

Mr. BYRNES. No funds are available.

Mr. WALSH. The House Bill did seek to provide funds for re-enlistment bounties in the Army. Of course, it would be highly discriminatory to have re-enlistment bounties paid to those who re-enlist in the Army, and none paid to those who re-enlist in the other branches of the military service.

Mr. BYRNES. It would certainly be discriminatory, and cause great dissatisfaction among the services.

Mr. WALSH. Is the bill now in such shape that no funds are provided for re-enlistment bounties for any branch of the military service?

The provision was thereafter included by the conference committee as a proviso to § 402 of H. J. Res. 679 (which later became Pub. Res. No. 122). See 83 Cong. Rec. 9512, 9677. It was passed by the Senate without much debate.[4] In the House, the debate disclosed that the amendment had the same purpose and effect as the provision inserted in the various appropriation bills for the preceding years. Representative Woodrum, in presenting the amendment to the House, described it as follows (83 Cong. Rec. 9677):

". . . we are providing a further inhibition for 1 year against payment of the re-enlistment allowances in the military and naval services.

Mr. BYRNES. That is correct.

Mr. WALSH. What the Senator sought to do was to have Congress declare as its policy that it did not intend in the future to pay such re-enlistment bounties, so as to prevent possible claims; is not that true?

Mr. BYRNES. Mr. President, the sole position of the Committee is that no funds being provided, we should not leave open the opportunity for numbers of persons to file claims in the Court of Claims in behalf of men who re-enlist, with the result that a year from now, or 2 years from now, some men would receive the re-enlistment bounty or some part of it, after the attorneys received their fees.

Mr. WALSH. I think I understand.

[4] The debate in the Senate was as follows (83 Cong. Rec. 9512):

Mr. WALSH. Mr. President, I understand that the bill as it passed the House contained a provision for the use of funds from this appropriation for re-enlistments in the Army, and no provisions were made for the use of any of the appropriation for the payment of re-enlistments in the Navy, the Marine Corps, or the Coast Guard.

Mr. ADAMS. That is correct.

Mr. WALSH. The purpose of the amendment is to eliminate the provision for payment in case of re-enlistments in the Army because it is discriminatory against the other services and civil forces, which formerly received re-enlistment pay and allowances.

Mr. ADAMS. That is correct, and it is to open the way for statutory clearing of the whole situation.

"No re-enlistment allowances have been paid for the past 5 fiscal years in any of the services, and in the absence of permanent law stopping it, the inhibition has been shuttled about in economy bills and appropriation bills at one time or another. We have not paid them for 5 years, and the latter part of this amendment now before the House is a Senate amendment which discontinues for another year the payment of the re-enlistment allowances."

The opponents of the amendment, while questioning its wisdom, were in general agreement with its sponsors concerning its purpose and effect. 83 Cong. Rec. 9678–9679. The amendment was then adopted by the House. 83 Cong. Rec. 9679.

We are of opinion that Congress intended in § 402 to suspend the enlistment allowance authorized by § 9 during the fiscal year ending on the 30th of June, 1939. The legislative history, summarized above, discloses that Congress intended the legislation concerning the allowance during the fiscal years 1938 and 1939 as a continuation of the suspension enacted in each of the four preceding years. The adoption in the act of May 28, 1937, of different terminology might in other circumstances indicate an intent to change the object of the legislation. Compare *Brewster* v. *Gage,* 280 U. S. 327, 337; *Crawford* v. *Burke,* 195 U. S. 176, 190; *Pirie* v. *Chicago Title & Trust Co.,* 182 U. S. 438, 448. But the drawing of such an inference is a workable rule of construction, not an infallible guide to legislative intent, and cannot overcome more persuasive evidence where, as here, it exists. Compare *Boston Sand & Gravel Co.* v. *United States,* 278 U. S. 41, 48.

The respondent contends that the words of § 402 are plain and unambiguous and that other aids to construction may not be utilized. It is sufficient answer to deny that such words when used in an appropriation bill are

words of art or have a settled meaning. See *United States v. Perry,* 50 F. 743, 748 (C. C. A. 8th).[5] The very legislative materials which respondent would exclude refute his assumption. It would be anomalous to close our minds to persuasive evidence of intention on the ground that reasonable men could not differ as to the meaning of the words. Legislative materials may be without probative value, or contradictory, or ambiguous, it is true, and in such cases will not be permitted to control the customary meaning of words or overcome rules of syntax or construction found by experience to be workable; they can scarcely be deemed to be incompetent or irrelevant. See *Boston Sand & Gravel Co.* v. *United States, supra,* at 48. The meaning to be ascribed to an Act of Congress can only be derived from a considered weighing of every relevant aid to construction.[6] These lead to the conclusion that the judgment of the court below must be

*Reversed.*

The CHIEF JUSTICE, MR. JUSTICE McREYNOLDS, MR. JUSTICE STONE and MR. JUSTICE ROBERTS are of opinion that the judgment should be affirmed on the views expressed by the Court of Claims.

---

[5] Compare Luce, *Legislative Problems* (1935), pp. 421 *et seq.,* 432.

[6] "Where the mind labours to discover the design of the legislature, it seizes every thing from which aid can be derived . . ." *United States* v. *Fisher,* 2 Cranch 358, 386.