Whitaker, Judge,
delivered the opinion of the court:
Under sections 2 and 6 of the act of July 2,1926 (44 Stat. 780, 781), officers and enlisted men of the Army and the Navy were entitled to 50 per cent extra pay if they were required by competent authority to, and did, participate regularly and frequently in aerial flights. But, the act of April 26, 1938 (52 Stat. 223, 232), making appropriations for the Navy for the fiscal year ending June 30, 1939, provided:
Pay of naval personnel: For pay and allowances prescribed by law of officers on sea duty and other duty, and officers on waiting orders, pay — $35,457,649, including not to exceed $1,716,318 for increased pay for making aerial flights, no part of which shall be available for increased pay for making aerial flights by any officer above the rank of captain, except not more than one officer of the rank of rear admiral. * * *
*207 From July 1, 1988, to June 30, 1939, the plaintiff was an officer above the rank of captain, and pursuant to competent orders he regularly and frequently participated in aerial flights. He is, therefore, entitled to the increased pay provided for by section 2 of the act of July 2,1926, supra, unless this act was suspended by the Appropriation Act pf April 26, 1938, supra.
There is no doubt that where a liability is created by statute, that liability can be enforced whether or not an appropriation has been made to discharge it. Even though an appropriation be made which is insufficient to pay the obligation, whether for pay or otherwise, the obligation is not discharged pro tanto, and recovery may be had for any deficiency, unless it appears from the act making the appropriation that it was intended to repeal or to suspend or to modify the previously existing law creating the obligation. Geddes v. United States, 38 C. Cls. 428; United States v. Langston, 118 U. S. 389.
The question presented here, therefore, is whether or not. Congress intended to repeal, modify, or suspend the act of July 2, 1926, insofar as officers above the rank of captain were concerned.
In United States v. Langston, supra, the Supreme Court had before it an appeal from a decision of this court granting judgment in favor of the Minister to Haiti for a balance alleged to be due him for salary. Under section 1683 of the Revised Statutes provision was made for a Minister to Haiti at a salary of $7,500 a year, and until the year 1883 appropriations had been regularly made therefor. However, on July 1,1882, the appropriation for such Minister for the following fiscal year was only $5,000. This court rendered judgment for the deficiency and an appeal was taken to the Supreme Court. In concluding its opinion that court said:
* * * While the case is not free from difficulty, the court is of opinion that, according to the settled rules of interpretation, a statute fixing the annual salary of a public officer at a named sum, without limitation as to time, should not be deemed abrogated or suspended by subsequent enactments which' merely appropriated a less amount for the services of that officer for par *208 ticular fiscal years, and which, contained no expressly or by clear implication modified or repealed the previous law.
The court distinguished the case there from the case of Fisher v. United States, 109 U. S. 143, because in that case the appropriation was “in full compensation” for the services for the year in question; and it also distinguished it from the case of United States v. Mitchell, 109 U. S. 146, because in that case an appropriation had been made for pay of interpreters, and an additional appropriation had been made for additional pay for interpreters to be paid at the discretion of the Secretary of the Interior. The court had concluded in both the Fisher and the Mitchell cases that it was evident from the language of the appropriation acts that Congress had intended to limit the pay to the sums appropriated. But in the Langston case the court said that the appropriation of a smaller amount, and no more, afforded no indication of such a legislative intent.
In Dickerson v. United States, 89 C. Cls. 520, 310 U. S. 554, we had before us an action by an enlisted man for the reenlistment allowance authorized by section 9 of the act of June 10, 1922. Beginning with the act of July 1, 1938, the provisions of section 9 of the act of June 10, 1922, were expressly suspended in successive appropriation acts until the acts making appropriations for the fiscal years 1938 and 1939. The provisions in those appropriation acts did not expressly suspend section 9 of the act of June 10, 1922, but provided that “no part of any appropriation contained in this ■or am/ other act for the fiscal year ending June 30, 1939, ¡shall be available for the payment of” reenlistment allow-iances “made during the fiscal year ending June 30, 1939, -inotwithstanding the a/pplicable provisions of sections 9 and 10 •of the” act of June 10, 1922. (Italics supplied.)
We decided that Congress did not intend thereby to repeal the provisions of section 9, and we gave judgment for the plaintiff. The Supreme Court reversed, holding that Congress did intend to suspend the provisions of section 9. In ■reaching this conclusion, the majority were largely influenced by the legislative history back of the legislation, which it *209 .held evidenced an intention to continue the suspension provided for by previous appropriation bills.
The appropriation act in the Dickerson case was more «explicit than is the appropriation act in the case at bar. In the Dickerson case express reference was made to the act granting these allowances and it was provided that the appropriation made should not be available to pay these .allowances, notwithstanding the provisions of the act granting them. The appropriation act in the case at bar does not make such explicit reference, but it is plain that it had in mind the act authorizing increased pay for aerial flights.
The mere fact that Congress makes a certain appropriation unavailable to discharge an obligation is not of itself ■conclusive evidence of an intention on the part of Congress to repeal or suspend the law under which the obligation arose. But, as in the Dickerson case, the legislative history of this .act convinces us that such was its intention. The committee ■on appropriations, in reporting this bill to the House, said:
The remaining amount ($7,000) of the reduction proposed by the committee under this head runs to the item of flight pay for flag officers. The current appropriation act limits the number of flag officers who might -draw flight pay to three. The budget proposes to increase the number to four. The committee bias fixed the number at two, with the thought that one would be the incumbent of the Office of the Bureau of Aeronautics and ■the other the officer filling the position of commandant •of the flight school at Pensacola. Generals do not lead armies, and it is not reasonable to believe that officers •of relative rank in the Navy will lead air armadas or take to the air to engage or scout or otherwise contact hostile air forces. Why, therefore, should they be required to fly, which they would be required to do in order to draw flight pay, in time of peace? They are supposed to have come up from grades below where they had experience as active pilots or observers, thus qualifying them for command posts identified with aviation either ashore or afloat.
In other words, the appropriation committee did not deem it necessary for officers above the grade of captain to engage in aerial flights and, therefore, reduced the appropriation for this purpose and made available only sufficient money to pay two officers above the grade of captain for aerial flights; *210 whereas, formerly appropriation had been made for three,, and the budget had requested four for the year under consideration.
When the bill reached the Senate it was amended by-providing that no part of the appropriation should be available for such increased pay for any officer above the rank of captain. In conference it was agreed to provide for such increased pay for one such officer.
This history, in view of the doubt about the legislative-intent, persuades us that Congress did not think it necessary for more than one such officer to engage in aerial flights, and’ meant to prohibit their doing so, or, at any rate, to deprive them of extra compensation therefor in case they did.
Accordingly, we hold that section 2 of the act of July 2;. 1926 was suspended by the act of April 26,1938, and that the plaintiff is not entitled to recover. It is so ordered.
Littleton, Judge; Green, Judge; and Whaley, Chief; Justice, concur.