Marcantonio ROCCAFORTE

v.

John F. MULCAHEY, District Director.

Civ. A. No. 58–35–F.

United States District Court

D. Massachusetts.

June 4, 1958.

**362**

Manuel Katz, Paul Smith, Boston, Mass., for plaintiff.

Anthony Julian, U. S. Atty., George H. Lewald, Asst. U. S. Atty., Boston, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

This petitioner for a writ of habeas corpus is now in custody under a warrant of deportation issued September 29, 1952, under Section 19(a) of the Immigration Act of 1917, 8 U.S.C.A. § 155(a), providing for the deportation of any alien who after the passage of the act was sentenced more than once to a term of imprisonment of one year or more because of conviction in this country of any crime involving moral turpitude, committed at any time after entry. After a hearing on May 7, 1952, a Hearing Officer of the Immigration and Naturalization Service found that petitioner was deportable under this provision and ordered him deported. His findings and conclusions were adopted and the order affirmed on June 12, 1952, by the Acting Assistant Commissioner of the service. Petitioner's appeal from this decision was dismissed on September 19, 1952, and the warrant of deportation was issued on September 29, 1952.

This procedure petitioner admits followed the Immigration Procedural Regulations then in effect, 8 C.F.R. 150.1 et seq. However, he contends that this procedure violated the requirements of the Administrative Procedure Act, 5 U.S. C.A. § 1001 et seq., and deprived petitioner of the due process of law guaranteed him by the Fifth Amendment of the Constitution of the United States. In particular petitioner sets forth several aspects of that procedure. The Hearing Officer was required, where, as here, no Examining Officer was assigned, to examine witnesses and present evidence to support the charges and might himself lodge additional charges against the alien. However, petitioner does not contend that any of the findings of the Hearing Officer are wrong. The facts involved are not in dispute and were indeed stipulated by the parties at the hearings. Admittedly the Hearing Officer lodged no additional charges against the petitioner. The feature of the procedure on which petitioner really relies is that all those participating in the procedural chain, from the Hearing Officer to the Board of Immigration Appeals, were subject to the supervision, direction and control of the Attorney General, and particularly that the Hearing Officer was subject to the supervision, direction and control of supervisory officers of the Immigration Service who performed investigative and prosecutorial functions. The Hearing Officer himself at the time of this hearing and prior thereto from April 11, 1951, was assigned to the sole duty of conducting hearings relative to the exclusion or expulsion of aliens.

In the case of Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, the Supreme Court held that the requirements of the Administrative

Procedure Act applied to deportation proceedings conducted by the Immigration Service and that the procedure followed by the Service in that case, which is the same procedure that was followed here, did not meet those requirements. Shortly after this decision Congress in enacting the Supplemental Appropriation Act, 1951, included therein, under the heading "General Provisions—Department of Justice" the following provision: "Proceedings under law relating to the exclusion or expulsion of aliens shall hereafter be without regard to the provisions of sections 5, 7, and 8 of the Administrative Procedure Act (5 U.S.C. 1004, 1006, 1007)." 8 U.S.C.A. § 155a, 64 Stat. 1048. Thereafter until the procedure prescribed by the Immigration and Nationality Act of 1952 became effective on December 24, 1952, and hence during the period when the proceedings against present petitioner took place, the Immigration Service continued to follow the same procedure as before the Sung case.

■■■ Petitioner contends that the Administrative Procedure Act was nevertheless applicable to the proceedings against him, and therefore, under the holding in the Sung case, the deportation order is invalid. His first argument is that Congress had no power by a provision in an appropriation act to make any change in substantive law. Petitioner cites no case which makes such an extreme holding, nor does he advance any argument which would support such a proposition. There is no reason why Congress, if it so wishes, cannot do by a provision in an appropriation act what it could do in a separate act. Taylce v. Kjaer, 84 U.S.App.D.C. 183, 171 F.2d 343, 344; National Labor Relations Board v. Thompson Products, Inc., 9 Cir., 141 F.2d 794, 797. That the inclusion of such legislation in an appropriation act may be considered bad legislative practice or may be subject to a point of order under the rules of both Houses of Congress does not affect its validity. In United States v. Dickerson, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356, the issue was whether a proviso appended to an appropriation for the Rural Electrification Administration suspended for the fiscal year ending June 30, 1939, the provisions of § 9 of the Act of June 10, 1922, authorizing re-enlistment allowances to service men. The Court stated, 310 U.S. at page 555, 60 S.Ct. at page 1035, "There can be no doubt that Congress could suspend or repeal the authorization contained in Section 9; and it could accomplish its purpose by an amendment to an appropriation bill, or otherwise." The Court then held that the proviso did suspend § 9, after pointing out that it had been previously offered as an amendment to another appropriation bill in each House and rejected on a point of order.

■■■ Petitioner alternatively contends that in any event the effect of the provision could not extend beyond the fiscal year ending June 30, 1951, to which the appropriation bill applied. What has been said as to the power of Congress to include substantive enactments in appropriation bills makes it clear that Congress can make these effective as permanent changes in the law. The real issue is whether Congress intended the provision to have permanent application or to be limited to the fiscal year in question. Where Congress expressly limits a change of substantive law to a given fiscal year, or where the change is inserted in an appropriation bill in the form of a proviso limiting the use to which appropriated funds can be put, it is clear that only a temporary suspension of conflicting substantive law is intended. The provision here in question stands apart from any specific item of appropriation. The express use of the word "hereafter" clearly indicates an intent to give the provision permanent effect, rather than limiting it to the remaining months of the current fiscal year. Plaintiff theorizes that Congress intended a temporary effect because its purpose was to avoid an additional appropriation which would be needed to enable the Immigration Service to comply with the requirements of the Administrative Procedure Act. But it is equally

arguable that even if that is the sole motive, Congress intended to permanently set aside the effect of the Sung decision until such time as it would make specific provision, as it did in the 1952 Act, for the procedure to be followed in deportation cases. Although the question was not before it, the Supreme Court in Marcello v. Bonds, 349 U.S. 302, 306, 307, 75 S.Ct. 757, 99 L.Ed. 1107, seems to have assumed that the provision continued in effect until superseded by the Immigration Act of 1952, and Congress in enacting the 1952 Act believed it necessary to insert a provision, § 403(a)(47) of the Act, specifically repealing the provision in question. 66 Stat. 280.

■ There remains petitioner's contention that even if the Administrative Procedure Act does not apply, nevertheless the procedure followed violated petitioner's constitutional right to due process because the Hearing Officer was subject to the supervision of superior officers who performed investigative and prosecutorial functions or because the Hearing Officer in this case had the duty of presenting evidence in support of the charges in addition to the duties of hearing and deciding them.

As to the first of these, a similar argument advanced in Marcello v. Bonds, supra, 349 U.S. at page 311, 75 S.Ct. at page 762, was rejected by the Supreme Court, which said, "As noted above, the only complaint which petitioner can urge concerning the hearing procedures in this case is the objection that the special inquiry officer was subject to the supervision and control of officials in the Immigration Service charged with investigative and prosecuting functions. Petitioner would have us hold that the presence of this relationship so strips the hearing of fairness and impartiality as to make the procedure violative of due process. The contention is without substance when considered against the long-standing practice in deportation proceedings, judicially approved in numerous decisions in the federal courts, and against the special considerations applicable to deportation which the Congress may take into account in exercising its particularly broad discretion in immigration matters."

Marcello v. Bonds was specifically concerned only with the procedure prescribed for deportation proceedings by § 242(b) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1252(b), but the language of the Court leaves no doubt that petitioner's constitutional rights were not violated by the fact that the Hearing Officer in his case was subject to the supervision of officials having investigative or prosecutorial functions, certainly where this was the long-standing practice approved by the Court in the paragraph quoted above, and also approved by Congress when, following the Sung decision, it reinstated the traditional procedure of the Immigration Service by freeing it from the requirements of the Administrative Procedure Act.

■■ Likewise it cannot be held that the fact that the Hearing Officer also had the duty of examining witnesses and presenting evidence in support of the charges violated petitioner's rights in this proceeding. The fact that hearing and investigating functions are combined in the same officer in deportation proceedings is not in itself a denial of due process. United States ex rel. Catalano v. Shaughnessy, 2 Cir., 197 F.2d 65, 67. In this case the examining functions of the Hearing Officer were merely perfunctory, since there was no dispute as to the facts, which were set forth in a written stipulation signed by counsel representing petitioner at the hearing. In any case, petitioner should have raised any objection to the combination of functions in a single officer at the time of the hearing. Harisiades v. Shaughnessy, 342 U.S. 580, 584 note 4, 72 S.Ct. 512, 96 L.Ed. 586.

■ Petitioner also presents several other arguments for holding the deportation order invalid. The first of these is that the conclusions of law of the Hearing Officer, on which his order was based,

are inconsistent and irreconcilable. These conclusions read as follows:

"Conclusions of Law: Upon the basis of the foregoing findings of fact, it is concluded:

"(1) That under Section 19 of the Act of February 5, 1917, the respondent is subject to deportation on the ground that on or after May 1, 1917 he has been sentenced more than once to imprisonment for terms of one year or more, because of conviction in this country of crimes involving moral turpitude committed after entry, to wit: Breaking and entering in nighttime with intent to commit larceny and larceny; and armed robbery;

"(2) That under Section 19 of the Act of February 5, 1917, the respondent is not subject to deportation on the ground that he has been sentenced more than once to imprisonment for terms of one year or more because of conviction in this country of crimes involving moral turpitude committed after entry, to wit: Breaking and entering in the nighttime with intent to commit larceny and larceny; possession of burglary tools with intent to commit larceny; armed robbery."

Whatever inconsistency might appear from reading the two conclusions alone disappears when they are read in the light of the whole report of the Hearing Officer. The charges set forth conviction and sentence for three crimes: (1) breaking and entering in the nighttime with intent to commit larceny and larceny; (2) possession of burglary tools with intent to commit larceny; (3) armed robbery. The Hearing Officer found that petitioner had been convicted and sentenced for all three of these crimes but had received a pardon for the second one, which consequently could not serve as a basis for deportation. It is clear that what he means in his conclusions of law is that, because of the pardon, the charges cannot be sustained as to all three crimes, but that they can be sustained as to two, which is suffi-

cient to support a deportation order. There is no real inconsistency.

Petitioner next advances two arguments based on the fact that in 1949 he was pardoned by the Governor of Massachusetts for the crime of assault with intent to rob for which he was convicted in 1935 and the crime of possession of burglary tools for which he was convicted in 1945. The first argument is based on petitioner's strictly literal reading of the proviso of § 19(a) of the Immigration Act of 1917, 8 U.S.C.A. § 155 (a): *"Provided further,* That the provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned. * * *"* Petitioner reads this to mean that any alien who has ever received a pardon for any crime cannot thereafter be deported under this section regardless of how many other crimes for which he has been convicted and sentenced remain unpardoned. No case is cited in which such an interpretation has been adopted. The reasonable interpretation of the proviso, in the light of the general scheme of the statute, is that Congress intended only that a crime for which a pardon has been granted should not thereafter constitute a ground for deportation, and not that a single pardon granted for any crime should render the alien immune from deportation under this section regardless of how many times he might be convicted and sentenced for crimes either before or after this pardon. Cf. Vidal y Planas v. Landon, D.C., 104 F.Supp. 384, 387, and cases there cited, holding this proviso is not to be interpreted literally to include a pardon granted by a foreign government.

The other argument based on the pardon sets forth that on February 2, 1945, petitioner was convicted in the Superior Court for Essex County of two crimes: (1) breaking and entering in the nighttime with intent to commit larceny and larceny; and (2) possession of burglary tools with intent to commit larceny. Both crimes were alleged to

have been committed in Lynn on August 4, 1944. Petitioner received concurrent sentences of three to five years on these convictions. The first of these crimes is one of the two upon which the deportation order is based, the second is one of the crimes for which petitioner received a pardon. The argument appears to be that since these two crimes arose out of a single scheme of criminal misconduct, they must be treated, for purposes of deportation, as a single crime, and hence the pardon of one wipes out the other also.

Petitioner misconceives the effect of a provision of the present immigration law which had no counterpart in the law which governs this proceeding. There was nothing in § 19(a) of the Immigration Act of 1917 corresponding to the present limitation of 8 U.S.C.A. § 1251 (a) (4) authorizing deportation of one convicted of two crimes involving moral turpitude "not arising out of a single scheme of criminal misconduct." Even if this provision were applicable, it would not help petitioner here. It only requires that the two crimes upon which deportation is based shall not be parts of the same scheme of criminal misconduct. Here the order is based on two entirely separate crimes having no connection with one another. Nothing even in the present law forbids basing a deportation order on two such distinct crimes merely because one of them may have been part of the same criminal scheme as other crimes for which a pardon has been granted.

The final argument is based on the fact that petitioner was convicted on January 10, 1952, of armed robbery, and sentenced to imprisonment for not less than three years and not more than six years. This is one of the two crimes upon which the deportation order was based. Petitioner contends the order is invalid because when it was issued on September 29, 1952, he had not yet been imprisoned for more than one year under the sentence. The act, however, does not make the length of time spent in prison the decisive element, but rather the fact that the alien upon conviction has been sentenced to a term of one year or more. It has even been held that an indeterminate sentence is a sentence for more than a year, when the maximum period under which defendant might be confined is more than one year, even when he actually is confined for less than one year. United States ex rel. Paladino v. Commissioner of Immigration, 2 Cir., 43 F.2d 821; United States ex rel. Parenti v. Martineau, D.C., 50 F. 2d 902; United States ex rel. Kiobge v. Day, D.C., 42 F.2d 716. Here the petitioner was clearly sentenced for a term of more than one year. There was no requirement that the Immigration Service wait until he had actually completed a year in prison before proceeding for a deportation order.

The petition for a writ of habeas corpus is denied.