July 3, 1979

### 79-47 MEMORANDUM OPINION FOR THE DIRECTOR, OFFICE OF PERSONNEL MANAGEMENT

### Garnishment—Remuneration Paid to Federal Employees—Tennessee Valley Authority— Smithsonian Institution—42 U.S.C. §§ 659, 662

This responds to your request for our opinion whether your agency's draft regulation on garnishment for alimony and child support may lawfully cover payments for Federal workers' compensation, payments from the Tennessee Valley Authority (TVA) retirement system, and the salaries and benefits of "private roll" employees of the Smithsonian Institution.

We conclude that both workers' compensation payments and TVA retirement payments are subject to garnishment. The status of the Smithsonian's "private roll" employees is a more complex matter on which we are unable to give an opinion without first obtaining its views.

Under § 459(a) of the Social Security Act, as amended, 42 U.S.C. § 659(a), added in 1977,[1] remuneration for employment by the United States is subject to garnishment for alimony and child support. Section 461(a) of the Act, 42 U.S.C. § 661(a), authorizes the President to promulgate regulations implementing § 459 for the executive branch, including any wholly owned Federal corporation created by act of Congress. This authority has been delegated to you. Under § 462(f)(2) of the Act, 42 U.S.C. § 662(f)(2), "remuneration of employment" is defined to include:

> (2) periodic benefits (including a periodic benefit as defined in section 428(h)(3) of this title) or other payments to such individual under the insurance system established by subchapter II of this chapter or any other system or fund established by the

---

[1] Pub. L. No. 95-30, Title V, § 501(a).

United States (as defined in subsection (a) of this section) which provides for the payment of pensions, retirement or retired pay, annuities, dependents or survivors' benefits, or similar amounts payable on account of personal services performed by himself or any other individual (not including any payment as compensation for death under any Federal program, any payment under any Federal program established to provide "black lung" benefits, any payment by the Veterans' Administration as pension, or any payments by the Veterans' Administration as compensation for a service-connected disability or death, except any compensation paid by the Veterans' Administration to a former member of the Armed Forces who is in receipt of retired or retainer pay if such former member has waived a portion of his retired pay in order to receive such compensation), and does not consist of amounts paid, by way of reimbursement or otherwise, to such individual by his employer to defray expenses incurred by such individual in carrying out duties associated with his employment.

Your first question is whether proposed § 552.102(i)(3) of the regulation may lawfully include "amounts received under any federal program for compensation for work injuries"[2] as remuneration subject to garnishment. In our opinion, it can. As you point out, Senator Nunn, the sponsor of title V, expressly stated on the floor of the Senate that such payments would be subject to garnishment. *See* 123 CONGRESSIONAL RECORD S. 12909 (1977). This explanation, the sole relevant legislative history, is strong evidence that Congress intended Federal workers compensation payments to be covered. *See, e.g., United States* v. *Dickerson,* 310 U.S. 554, 557 (1940); *Richbourg Motor Co.* v. *United States,* 281 U.S. 528, 536 (1930). In addition, the text of § 462(b)(2) conforms to this expression of intent. By expressly excluding payments for disability arising from black lung, military service, or death related to employment, Congress showed that it considered the statute broad enough to include the general class of employment-related disability payments. Since workers' compensation payments (other than for death) were not excluded, they are covered as "remuneration" under § 462(b)(1). *See, e.g., United States* v. *Jones,* 567 F. (2d) 965 (10th Cir. 1977); *Tom* v. *Sutton,* 553 F. (2d) 1101 (9th Cir. 1976).

Your second question is whether payments from the Tennessee Valley Authority retirement system are "remuneration" under § 462(f)(2). The statute expressly provides that payments from a "fund established by the United States (as defined in subsection (a) of this section) which provides for the payment of pensions, retirement or retired pay, [or] annuities" is subject to garnishment. The TVA contends that its retirement system is

---

[2] We understand this to mean payments under the Federal Employees Compensation Act, 5 U.S.C. § 8101 *et seq.,* and any similar statute.

not established by the United States within the meaning of the Act because it is a separate legal entity not under the control of either TVA or your agency. We have examined the arguments presented by TVA, and we conclude that payments from its retirement system are subject to the Act.

The TVA argues that its retirement system is an unincorporated association directed by a separate board of directors: three appointed by the Authority, three elected by members of the system, and the seventh chosen by the others. Section 12 of the system's rules provides that:

> No transfer, assignment, pledge, seizure or other voluntary or involuntary alienation or encumbrance of any pension, annuity, or other benefit provided [by the retirement system is] permitted or recognized.

This "spendthrift" provision, asserts TVA, was held valid in *TVA* v. *Kinzer,* 142 F. (2d) 833 (6th Cir. 1944). In addition, it argues, the rules of the retirement system constitute a contract between TVA and its employees, and 16 U.S.C. § 831b forbids any statutory change that would "impair the obligation of any contract" made by TVA.

A closer reading of the Act and the *Kinzer* case, however, leads to the opposite conclusion. First, § 462(a) of the Act defines the "United States" to include "any wholly owned Federal corporation." This includes TVA. *See* 16 U.S.C. § 831.³ Nothing in the legislative history indicates that TVA was not to be included in this definition. Second, analysis of *Kinzer* plainly shows that the retirement system is "established" by TVA. The Court of Appeals held that TVA created the system, including rule 12, under its statutory authority to employ officers and agents without regard to the Civil Service laws and to "fix their compensation * * * and provide a system of organization to fix responsibility and promote efficiency." 142 F. (2d) at 835–836. The court noted that the retirement system was funded half by employee contributions and half by funds appropriated by Congress. 142 F. (2d) at 834–835. In finding the plan, including rule 12, to be within TVA's authority under 16 U.S.C. § 831b, the court pointed out that TVA employees were employees of the United States and that Congress regarded the retirement system as "the equivalent of the Civil Service Retirement System." 142 F. (2d) at 837–838. For that reason, the court held, rule 12 was valid despite a Tennessee law that prohibited such "spendthrift" provisions. *Id.*

Thus, *Kinzer*, on which TVA relies, is based on the view that the retirement system was established by a Federal instrumentality under statutory authority to further its purposes by enhancing the welfare of its employees. The retirement system is funded in the same way as the civil service retirement system and serves the same purpose. Despite TVA's

---

³ Office of Personnel Management's rulemaking authority under the Act also extends to any wholly owned Government corporation. Social Security Act, § 461(a)(1), 42 U.S.C. 661(a)(1).

asserted inability to control its trustees, the system is plainly "established" within the meaning of 459(a), 462(f)(2).

Nor can it be said that the application of the Act to the retirement system invalidates any contract right. TVA provides no authority for its assertion that the retirement system is based on contract. Insofar as we are aware, the system, including the restraint on alienation, was unilaterally created by the Authority. *See, TVA* v. *Kinzer, supra,* at 834-835. Where Congress has created a contributory retirement system by statute, it is well settled that an employee has no contractual right to future payments and thus lacks standing to object to statutory changes affecting only unaccrued future payments. *Nordstrom* v. *United States,* 342 F. (2d) 55, 169 Ct. Cl. 632 (1965); *Rafferty* v. *United States,* 210 F. (2d) 934 (3rd Cir. 1954). The same principle would apply to a unilateral change in the retirement system rules by TVA, and it applies *a fortiori* to a change required by statute. Thus, no contract obligation is impaired by the application of the Act to TVA.

Your third question is whether the salaries and benefits of the Smithsonian Institution's "private roll" employees may be subjected to garnishment under your proposed regulations. We understand that the "private roll" employees are paid with the Smithsonian's non-Federal funds, consisting of gifts, bequests, profits from its commercial activities, and the like. Whether their salaries and benefits may be subject to garnishment under your regulations has two aspects: first, whether these payments are "remuneration for employment due from or payable by the United States" within the meaning of § 459(a); second, whether the Smithsonian Institution is an agency in the executive branch within your rulemaking authority under § 461(a)(1). These are difficult and complex questions. The Smithsonian is *sui generis*: a fusion of a private and public body and a joint instrument, in a sense, of all three branches of the Government. Before expressing an opinion on its legal status or that of its "private roll" employees, we require more information than you have provided. Accordingly, we have requested the views of the General Counsel of the Smithsonian. Any further information or comment from you will also be welcome, including prior Civil Service Commission rulings relating to "private roll" employees.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

277