**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 95-10342
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

KENNETH W. McGILL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

January 18, 1996

Before DAVIS AND PARKER, Circuit Judges; BUNTON,[1] District Judge.

DAVIS, Circuit Judge:

McGill, a convicted felon, who lost his right to possess firearms upon his conviction of a felony, appeals from the dismissal of his application to restore his firearms privileges. We affirm the district court's judgment.

I.

Kenneth W. McGill pleaded guilty to two felony offenses: making a false statement pursuant to 18 U.S.C. § 1014 and filing a false tax return pursuant to 26 U.S.C. § 7206. In April 1993, he

_____

[1]District Judge of the Western District of Texas, sitting by designation.

was sentenced to probation for two years. The district court granted an early release from probation in September 1994.

Title 18 U.S.C. § 922(g)(1) prohibits a convicted felon from shipping, transporting, or possessing any firearms or ammunition. Title 18 U.S.C. § 925(c) permits any person to apply to the Secretary of Treasury for relief from the disabilities imposed under § 922(g)(1). The Secretary has transferred his authority to grant this relief to the Director of the Department of Alcohol, Tobacco and Firearms ("ATF"). 27 C.F.R. § 178.144.

McGill wrote the ATF requesting information about applying for relief from the § 922 firearm disability. The ATF informed him that it was no longer accepting applications for relief authorized by § 925(c) because Congress had denied funding for the program. Public Law 103-329 (1994) of the Treasury Department Appropriations Act specifically stated that "[n]one of the funds appropriated herein shall be available to investigate and act upon applications for relief from Federal firearms disabilities under 18 U.S.C. section 925(c)." Treasury, Postal Service and General Government Appropriations Act, 1995, Pub.L. No. 103-329, 108 Stat. 2382, 2385 (1994). McGill then filed with the district court an application for the removal of his § 922 Federal firearm disability. The district court promptly dismissed the application on the ground that it lacked jurisdiction. McGill filed a timely notice of appeal.

II.

2

We review de novo a district court's dismissal for lack of subject matter jurisdiction. Matter of Bradley, 989 F.2d 802, 804 (5th Cir. 1993). Although we doubt that the district court has original jurisdiction to consider an application to remove the Federal firearm disability, we pretermit that question because it is clear to us that Congress suspended the relief provided by § 925(c). "In the past, we similarly have reserved difficult questions of our jurisdiction when the case alternatively could be resolved on the merits in favor of the same party." Norton v. Mathews, 427 U.S. 524, 532, 96 S.Ct. 2771, 2775, 49 L.Ed.2d 672 (1976), cited in Texas Employers' Ins. Ass'n v. Jackson, 862 F.2d 491, 497 n.8 (5th Cir. 1988) (en banc), cert. denied, 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989).

Congress has the power to amend, suspend or repeal a statute by an appropriations bill, as long as it does so clearly. Robertson v. Seattle Audubon Soc., 503 U.S. 429, 440, 112 S.Ct. 1407, 1414, 118 L.Ed.2d 73 (1992). "There can be no doubt that Congress could suspend or repeal the authorization contained in [a current statute] . . .; and it could accomplish its purpose by an amendment to an appropriation bill, or otherwise." United States v. Dickerson, 310 U.S. 554, 555, 60 S.Ct. 1034, 1035, 84 L.Ed. 1356 (1940). "The whole question depends on the intention of Congress as expressed in the statutes." United States v. Mitchell, 109 U.S. 146, 150, 3 S.Ct. 151, 153, 27 L.Ed. 887 (1883).

Thus the question of whether the appropriations bill suspended the relief available under § 925(c) turns on the intent of Congress. Section 922, part of the Gun Control Act of 1968, was

3

enacted in response to the increase in violence resulting from firearm possession.  The act makes it unlawful for a convicted felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. 922(g).

Congress also established a statutory framework under which a convicted felon could seek relief from the Federal firearms disability.  Section 925(c) grants relief from § 922 by providing:

> A person who is prohibited from possessing, . . . firearms or ammunition may make application to the Secretary for relief from the disabilities imposed by Federal laws  . . ., and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. Any person whose application for relief from disabilities is denied by the Secretary may file a petition with the United States district court for the district in which he resides for a judicial review of such denial. The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice. . . .

18 U.S.C. § 925(c).

The Secretary delegated his authority to the Director of the ATF and adopted detailed regulations to govern the requirements an applicant must meet.  27 C.F.R. § 178.144.  The ATF conducts a broad-based field investigation of the convicted applicant's record and reputation before ruling on the application.  See Smith v. Brady, 813 F. Supp. 1382, 1383-84 (E.D. Wis. 1993) (describes ATF's investigative procedures under § 925(c)).  By its terms, § 925(c), gives the applicant the right to seek review in the district court

4

only after the Secretary has denied her application.  The district court is given authority to reverse the Secretary's order if the Secretary's denial was arbitrary, capricious or an abuse of discretion.  <u>Bradley v. Bureau of Alcohol, Tobacco, and Firearms</u>, 736 F.2d 1238, 1240 (8th Cir. 1984).

Even though § 925(c) allows the district court to admit additional evidence in extraordinary circumstances, the legislative history of this amendment makes it clear that Congress intended for district courts to review only the Secretary's denial under an arbitrary and capricious standard.  The Senate report states that this amendment "empowers the court to consider additional evidence in making its finding where a failure to do so might yield a miscarriage of justice.  In such a case, the court might in its discretion request the presence of an agent representing the Secretary, and stay the action for a suitable time to permit the Secretary to review his findings in light of the additional evidence, then proceed forward in the event the evidence does not alter his determination."  S. Rep. No. 476, 97th Cong., 2d Sess. 24 (1982); <u>see also</u>, David T. Hardy, <u>The Firearms Owners' Protection Act:  A Historical and Legal Perspective</u>, 17 Cumb. L. Rev. 585, 644 (1987).  We now turn to the appropriations acts which serve as the basis for the government's argument that the § 925(c) relief has been suspended.

In the 1993 Appropriations Act for the Treasury Department, Congress specifically barred any funding for ATF "to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. 925(c)."  Treasury, Postal Service, and General

Government Appropriations Act, 1993, Pub. L. No. 102-393, 106 Stat. 1729 (1992).  This funding limitation was continued with the same language in the next two appropriations acts -- Public Law 103-123 (1993) and Public Law 103-329 (1994).  In these last two acts, however, funds were expressly appropriated to process applications filed by corporations for relief under § 925(c).

In a report to the Senate, the Appropriations Committee explained why it withheld funds in the 1993 Appropriations Act for ATF action on applications for § 925(c) relief:

> Under the relief procedure, ATF officials are required to determine whether a convicted felon, including persons convicted of violent felonies or serious drug offenses, can be entrusted with a firearm.  After ATF agents spend many hours investigating a particular applicant[,] they must determine whether or not that applicant is still a danger to public safety.  _This is a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made.  The Committee believes that the approximately 40 man-years spent annually to investigate and act upon these investigations and applications would be better utilized to crack down on violent crime._  Therefore, the Committee has included language in the bill which prohibits the use of funds for ATF to investigate and act upon applications from relief from Federal firearms disabilities.

S. Rep. No. 353, 102nd Cong., 2d Sess. 77 (1992)(emphasis added).

This report expresses concern over:  (1) use of limited valuable resources for investigating these difficult cases and (2) consequences to innocent citizens if ATF makes a mistake and grants relief to a felon from his firearm disabilities.

By withdrawing funds to the ATF to process these applications under these circumstances and with this explanation by the appropriations committee, it is clear to us that Congress intended to suspend the relief provided by § 925(c).  We cannot conceive that Congress intended to transfer the burden and responsibility of

6

investigating the applicant's fitness to possess firearms from the ATF to the federal courts, which do not have the manpower or expertise to investigate or evaluate these applications.

We disagree with the contrary conclusion of the Third Circuit in Rice v. United States Dept. of Alcohol, Tobacco, and Firearms, 68 F.3d 702, 707 (3d. Cir. 1995). The Rice court concluded that "[t]he appropriation acts presently before us fail to show a clear intent to repeal section 925(c) or to preclude judicial review of BATF's refusal to grant relief from firearms disabilities."

We agree with Moyer v. Secretary of Treasury, 830 F. Supp. 516 (W.D.Mo. 1993). In that case the court found that the limitation on ATF's funds reflected a Congressional intent to suspend the ability of convicted felons to seek relief from Federal firearms disabilities.

We also find the history of funding for investigating applications from corporations as evidence of the intent of Congress to suspend the relief available under § 925(c). The initial 1993 Appropriations Act (Pub. L. No. 102-292) barred the ATF from using funds to investigate any applications. In the 1994 Appropriations Act (Pub. L. No. 103-123) Congress expressly restored funding to the ATF to investigate applications from corporations, but continued to withhold funds to investigate applications from individuals. If Congress thought the courts were considering applications for relief under § 925(c), this restoration of funds to provide relief for corporations would have been unnecessary. In the 1995 Appropriations Act, Congress continued to provide funding for ATF to investigate corporate

7

applications while maintaining its hold on funds to investigate individual applications.

We therefore conclude that relief from federal firearms disabilities for individuals under § 925(c) is suspended by the last three appropriations acts.

McGill alteratively argues for the first time on appeal that, if we find § 925(c) as repealed or suspended, we should also find that § 922(g) was repealed or suspended. We will not consider an argument raised for the first time on appeal unless it rises to the standard of plain error. United States v. Olano, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The standard for plain error is a clear or obvious error that affected substantial rights or seriously affected the fairness or integrity of the judicial proceeding. United States v. Calverly, 37 F.3d 160, 162 (5th Cir. 1994) (en banc), cert. denied, 115 S.Ct. 1266 (1995). The district court certainly did not commit obvious error in failing to declare § 922(g) suspended.[2]

---

[2]We are satisfied that McGill's argument that Congress intended to suspend § 922 is meritless. The explicit reason Congress withheld funding from ATF was not to give convicted felons the right to possess weapons but to allocate those funds to enforcement. In a 1995 report to the House, the Committee on Appropriations stated:

> For the fourth consecutive year, the Committee has added bill language prohibiting the use of Federal funds to process applications for relief from Federal firearms disabilities. The Committee understands the controversial nature of the underlying law allowing convicted felons to have their right to own a firearm restored. However, those who commit serious crimes forfeit many rights and those who commit felonies should not be allowed to have their right to own a firearm restored. We have learned sadly that too many of these felons whose gun ownership rights were restored went on to commit violent crimes with firearms. There is no reason to spend the Government's time or taxpayer's money to restore a convicted

8

For the reasons stated above, we conclude that Congress has suspended the relief provided in § 925(c) for individuals. We therefore affirm the district court's dismissal.

AFFIRMED.

---

felon's right to own a firearm.

H.R. Rep. No. 183, 104th Cong., 1st Sess. 23 (1995).