William H. SMITH, Plaintiff,

v.

Nicholas F. BRADY, Secretary, Department of the Treasury, and Stephen E. Higgins, Director, Bureau of Alcohol, Tobacco and Firearms, Defendants.

Civ. A. No. 92-C-478.

United States District Court, E.D. Wisconsin.

Feb. 24, 1993.

Robert A. Kennedy, Jr., Kennedy Law Office, Crandon, WI, for plaintiff.

Nathan A. Fishbach, Deputy U.S. Atty., Chief, Civ. Div., Milwaukee, WI (David C. Lieberman Office of Chief Counsel, Bureau of Alcohol, Tobacco and Firearms, of counsel), for defendants.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

In this action, filed April 30, 1992, plaintiff William H. Smith ("Smith") seeks review of the decision by defendants Nicholas F. Brady ("Brady"), Secretary of the Treasury, and Stephen E. Higgins ("Higgins"), Director of the Treasury Department's Bureau of Alcohol, Tobacco, and Firearms, denying Smith's application for relief from firearm disability pursuant to 18 U.S.C. § 925(c). On December 18, 1992, Smith filed a motion for an evidentiary hearing on this matter, and defendants filed a motion for summary judgment. For reasons stated below, Smith's motion is denied, and

defendants' motion for summary judgment is granted.

## FACTS [1]

On June 19, 1978, Smith pled guilty in a Wisconsin court to a charge of arson, a felony, and was sentenced to three years probation. Because of the felony conviction, Smith was prohibited under 18 U.S.C. § 922(g)(1) from possessing firearms. In June 1989, Smith applied to the Treasury Department's Bureau of Alcohol, Tobacco and Firearms ("ATF") for relief from his firearm disability, pursuant to 18 U.S.C. § 925(c), listing Illinois as his residence. (Deft. Statement of Facts at ¶ 8.[2]) ATF denied the application pursuant to its policy of refusing to restore firearms privileges to any applicant whose state of residence would prohibit the applicant from possessing firearms, as Illinois would in this case. 27 C.F.R. § 178.144(d). (Deft. Statement of Facts at ¶ 10.)

Smith filed a second relief application on August 25, 1989, this time listing Alvin, Wisconsin, as his residence. That application was denied on April 10, 1991, because ATF investigators were unable to contact Smith at the address and telephone he supplied.

On July 18, 1991, Smith filed a third relief application along with supporting materials indicating that he did in fact reside in Alvin, Wisconsin. An ATF agent eventually was able to contact Smith in Oak Park, Illinois, where his parents lived. After making this initial contact, the agent conducted an investigation into the merits of Smith's application. The agent found that Smith's arson conviction arose from a fire he set to the cabin of a former girlfriend by dousing it with gasoline. Several of Smith's long-time acquaintances, apparently from Illinois, recommended that his firearm privileges be restored; each of these acquaintances described him as a decent person, although two mentioned that he had been "messed up" in the past. But

---

1. Unless otherwise indicated, what follows is taken from the redacted administrative record submitted by defendants, which, as discussed below, must be the basis for the court's decision in this case.

2. This and all subsequent statements of fact by defendants are deemed to be undisputed because Smith has not directly responded to them. Local Rule 6.05(d) (E.D.Wis.)

a few Wisconsin residents familiar with Smith said he was "unpredictable," a trouble-maker, and "involved with drugs." These people recommended that Smith's application be denied. So did Smith's parole officer and a Forest County Deputy Sheriff, both of whom cited Smith's long history of violence and drug abuse.

Smith's criminal record, not including the arson conviction, revealed that in June 1977 he pled guilty in a Michigan court to obtaining a controlled substance by fraudulent means (he forged a prescription) and was sentenced to probation for about nine months; in December 1977 he was found guilty in a Wisconsin court of stealing lumber and was sentenced to one year probation; in January 1978 he was arrested for bribery of a witness involved in the lumber case; and in February 1980 he was arrested for reckless use of firearms (he was said to have pointed a gun at his wife), a charge which was dismissed when Smith agreed to enter a drug treatment program.

Smith told the ATF agent that he was a self-employed electrician working out of the basement of his parents' home in Oak Park, Illinois, and that he made occasional weekend trips to his residence in Wisconsin. Smith acknowledged that more than once in the past he had threatened to commit suicide and that he abused alcohol and drugs when he was younger. He said he wanted his firearms privilege restored so that he could go deer-hunting.

The ATF agent recommended that Smith's application be denied, based on his apparently unstable emotional state, his history of substance of abuse and violence, his tendency to minimize the severity of his criminal activity, and his lack of a "compelling need" for restoration of the firearms privilege. ATF accepted the recommendation and, on April 3, 1992, informed Smith that his relief application had been denied.

Smith seeks to challenge the ATF's findings on the ground that its investigative techniques were improper, citing reports from "Frontline" and "60 Minutes" concerning the Justice Department's prosecution of Leonard Peltier, the State Department's red-baiting of a college professor,

and the sexual harassment of ATF agents by their superiors.

As for his own case, which seems entirely unrelated to any of those, Smith claims the ATF investigation did not take into account his volunteer work for the Forest Service, for which he has received certificates of appreciation that were submitted along with his application. (Dec. 16, 1992 Smith Aff. Concerning Investigation at 2.) Smith also claims the ATF agent failed to interview one of the three character references listed on Smith's application. (*Id.* at 3.) Further, Smith says the agent's report was inaccurate in various respects, including these: Smith was convicted in 1977 on one count, not four counts as the agent reported, of fraudulently obtaining a controlled substance, and Smith's probation officer was Clinton Hand, not Jean Young as the agent reported. (Dec. 16, 1992 Smith Aff. Concerning Record at 3.)

## ANALYSIS

### I.  Scope of Review.

The Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.*, prohibits convicted felons from possessing firearms but permits anyone subject to such "disability" to apply to the Treasury Secretary for relief from it. 18 U.S.C. § 925(c). The Secretary is to grant such relief if:

> it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.

*Id.* If the Secretary denies an application for relief, the applicant may seek review of the denial in federal district court. *Id.* The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, supplies the standard of review in such cases. The reviewing court is to determine whether the Secretary's decision was "arbitrary" or "capricious." 5 U.S.C. § 706; *Bradley v. Bureau of Alcohol, Tobacco, and Firearms*, 736 F.2d 1238, 1240 (8th Cir.1984).

But the applicable *scope* of review is another question. Normally, the APA requires that the reviewing court consider the "whole record" compiled by the agency. 5 U.S.C. § 706. Defendants insist, however, that the court should review only the "statement of reasons" submitted by Higgins explaining his denial of Smith's application. That more limited scope of review was first articulated in *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), a case involving review of the Labor Secretary's decision not to bring suit to set aside a union election allegedly conducted in violation of the Labor–Management Reporting and Disclosure Act ("LMRDA"). The Supreme Court held that although the Secretary's decision would be reviewed pursuant to APA standards, there would be no "trial-type inquiry into the factual bases of the Secretary's conclusion." *Id.* at 566, 95 S.Ct. at 1857. Instead, the scope of review would be limited to the Secretary's statement of reasons for the decision, including a statement of the "essential facts" upon which the decision was based. *Id.* at 574, 95 S.Ct. at 1861.

In that respect, *Dunlop* conflicts with *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), where the Supreme Court held that the APA review was to be based on the " 'whole record' compiled by the agency," not merely on "litigation affidavits" supplied by the agency in support of its decision. *Citizens*, 401 U.S. at 419, 91 S.Ct. at 825. Such affidavits, described as "merely 'post hoc' rationalizations," would be reviewed only when necessary to draw a connection between the administrative record and the agency's conclusion, mainly in situations where the record contained no specific findings. *Id.* at 420, 91 S.Ct. at 825. Thus, while *Dunlop* allows the statement of reasons to substitute for the administrative record, *Citizens* allows the statement only to supplement the record.

The *Dunlop* court departed from *Citizens* and, really, from the language of the APA, apparently out of concern that a more thorough inquiry into the Labor Secretary's decision on whether to challenge union elections would defeat the very purpose of giving the Secretary the exclusive authority to bring such challenges. That purpose, the court said, was " 'to settle as quickly as practicable the cloud on the incumbents' titles to office.' " *Dunlop*, 421 U.S. at 568–69, 95 S.Ct. at 1858. Chief Justice Burger's concurrence confirms the exceptional nature of the *Dunlop* decision. He writes, "The language and purposes of [the LMRDA] have required the Court to define a scope of review much narrower than applies under [the APA] in most other administrative areas." *Id.* at 590, 95 S.Ct. at 1868.

Notwithstanding the limited reach of *Dunlop*, the Ninth Circuit has held that it applies to the review of ATF decisions denying relief from firearms disability. *Kitchens v. Dept. of the Treasury*, 535 F.2d 1197, 1199–1200 (9th Cir.1976). The *Kitchens* court said, in effect, that *Dunlop* applies whenever an agency is granted "broad discretion" with respect to the decision at issue. *Id.* at 1199. But if that is the case, it is difficult to conceive of a situation in which *Dunlop* would not apply, for, in the vast majority of cases, judicial review of agency decisions is premised on the assumption that the agency enjoys broad discretion; hence, the arbitrary-and-capricious standard. While *Dunlop* did take note of the degree of discretion afforded the Labor Secretary, clearly the court's central concern was about resolving the underlying labor dispute in a speedy, definitive manner. *Dunlop*, 421 U.S. at 573, 95 S.Ct. at 1860.

■ This court concludes that the APA, not *Dunlop*s exception to it, applies in the instant case. *Dunlop* is simply not analogous here, because there is no indication that the statute authorizing the Treasury Department to restore firearms privileges was designed primarily to ensure the speedy resolution of relief applications. On the contrary, the Gun Control Act by its terms makes possible the very "trial-type inquiry" that *Dunlop* hoped to avoid; the reviewing court is permitted to "admit additional evidence where failure to do so would result in a miscarriage of justice."

18 U.S.C. § 925(c). As the concerns underlying *Dunlop* are not present in this case, the court will follow the APA and base its decision on the administrative record, not merely on defendants' statement of reasons.

■ Defendants ask that if the record must be considered, the court accept a redacted version of it, in which the names and identities of those who spoke concerning Smith's application are blackened out. The government does enjoy a privilege with respect to the names and identities of informants, apparently qualified only to the extent that if disclosure is necessary to a defense in a criminal case, the government must either disclose the information or dismiss the case. 1 McCormick on Evidence at 402, 410 (1992); 5 U.S.C. § 552(b)(7)(D). Having reviewed both the original and the redacted versions of the record, the court concludes that the redactions are not improper.

■ The final issue concerning scope of review is whether the court should, as Smith requests, go beyond the record and admit testimony telling Smith's side of the story, pursuant to 18 U.S.C. § 925(c). The court declines to do so, however, because it finds that no "miscarriage of justice" would result from relying solely on the administrative record. Although Smith has identified a few minor inaccuracies in defendants' report, he does not claim that defendants overlooked or disregarded or distorted any significant factual information that was particularly relevant to his relief application. Nor does Smith propose to offer some new evidence that came to light only after the ATF investigation.[3] Since Smith has identified no specific factual information favorable to him that is not mentioned in the record, no miscarriage of justice results from the court's failure to admit additional evidence.

## II. Review of Defendants' Decision.

As noted above, the applicable APA provision requires the court to determine whether the agency's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). These standards may be satisfied if the agency failed to consider factors relevant to its decision or if it committed a "clear error of judgment." *Citizens*, 401 U.S. at 416, 91 S.Ct. at 823. The court is not to substitute its judgment for that of the agency. *Id.*

■ The relevant factors here are the circumstances surrounding Smith's conviction, his record, and his reputation, as each of these bears on the question of whether restoration of his firearms privilege would be contrary to the public safety or interest. 18 U.S.C. § 925(c). Defendants say they took into account the "revengeful, violent" nature of his arson conviction, as well as the violent conduct underlying his arrest in 1980 for reckless use of a firearm, which took place when Smith was under his firearms disability. (Oct. 30, 1992 Higgins Declaration at ¶ 9(b).) Defendants say they also considered Smith's history of substance abuse, manifested most clearly in his 1977 arrest for fraudulently acquiring a controlled substance. Smith's 1977 conviction for theft and his 1978 arrest for bribery of a witness were taken into account, too.

Defendants concede that, with respect to Smith's reputation, he received mixed reviews. Interviewees who knew him in Wisconsin were unanimously opposed to restoration of his firearms privilege, while his Illinois neighbors said his application for relief should be granted. But defendants say they gave more weight to the people interviewed in Wisconsin, where Smith says he resides and where most of his misbehavior has occurred.

The record indicates that defendants considered each of the factors set forth in the Gun Control Act, and the court cannot conclude that defendants' application of those factors reflects a clear error of judgment.

---

**3.** Smith asks the court to consider a recent letter of recommendation from the Forest County circuit judge who presided over Smith's arson conviction. But the judge's views on the ATF investigation, while interesting, are not so enlightening as to demand the court's formal consideration.

According to the record, Smith has exhibited violent behavior in the past, has abused drugs and alcohol, and has developed, in certain Wisconsin circles at least, a quite poor reputation. While it does appear that defendants gave considerable emphasis to events of the distant past, they do not seem to have entirely disregarded more recent mitigating factors, such as the opinions of at least two of his character witnesses.

Under these circumstances, the court concludes that there is no genuine issue of fact as to whether defendants' denial of Smith's relief application was arbitrary or capricious. Thus, defendants are entitled to summary judgment.

IT IS THEREFORE ORDERED that the motion to admit additional evidence and the motion for a de novo hearing filed by plaintiff William H. Smith on December 18, 1992, are DENIED.

IT IS FURTHER ORDERED that the motion for summary judgment filed by defendants Nicholas F. Brady and Stephen E. Higgins on December 18, 1992, is GRANTED and this action DISMISSED.