Congress intended that federal courts devote their judicial resources to consider—on a more limited record than that before the ATF—the weighty question of whether a felon's firearm rights should be restored. Accordingly, we join with the Second, Fifth, Ninth, and Tenth Circuits in concluding that Congress, through its appropriations act, has chosen to at least temporarily suspend the operation of § 925(c) in its entirety, thereby removing subject matter jurisdiction from the district court.

### III.

For the foregoing reasons we REVERSE the district court's conclusion that it had subject matter jurisdiction to consider plaintiff's petition to have his firearm rights restored pursuant to § 925(c). While plaintiff's complaint also refers to restoration of his civil rights, it is clear that his right to bear arms is the only right sought. The case is dismissed for lack of subject matter jurisdiction.

---

cases.
    Fortunately, another decision by the Fifth Circuit in [McGill] found that congressional intent to prohibit any Federal relief--either through ATF or the courts--is clear. The Fifth Circuit concluded that convicted felons are therefore not eligible for judicial review of their relief applications.
    Given this conflict in the circuit courts, it is important that we once again clarify our original and sustaining intention. The goal of this provision has always been to prohibit convicted felons from getting their guns back--whether through ATF or the courts. It was never our intention to shift the burden to the courts.

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0371P (6th Cir.)
File Name: 00a0371p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JAMES MICHAEL MULLIS,
         *Plaintiff-Appellee,*

         *v.*                                    No. 99-6312

UNITED STATES OF AMERICA,
         *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 98-02894—Jon Phipps McCalla, District Judge.

Argued: August 2, 2000

Decided and Filed: October 19, 2000

Before: KENNEDY and NORRIS, Circuit Judges; KATZ,
District Judge.[*]

———————————

### COUNSEL

**ARGUED:** Thomas M. Bondy, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, D.C., for Appellant. Les Jones, BURCH,

---

[*] The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

PORTER & JOHNSON, Memphis, Tennessee, for Appellee. **ON BRIEF:** Thomas M. Bondy, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, D.C., for Appellant. Les Jones, W. J. Michael Cody, Susan M. Clark, BURCH, PORTER & JOHNSON, Memphis, Tennessee, for Appellee.

---

## OPINION

---

KENNEDY, Circuit Judge. The United States appeals the district court's order granting plaintiff's petition for the removal of the firearms disabilities imposed on him by 18 U.S.C. § 922 (g)(1). The Bureau of Alcohol, Tobacco & Firearms ("ATF") is the only agency authorized to grant relief from firearms disabilities under § 925(c). Congress, in its last eight appropriations acts, has prohibited the ATF from expending funds to process applications for the removal of firearm disabilities. The district court held that due to the inability of the ATF to act, it had subject matter jurisdiction under § 925(c) to grant relief from the disability, and restored plaintiff's right to possess firearms and ammunition. The government asserts that the district court lacked subject matter jurisdiction to consider plaintiff's petition for the restoration of firearm rights under 18 U.S.C. § 925(c). For the reasons detailed below, we agree and reverse the judgment of the district court and dismiss the case.

### I.

In 1994, James Michael Mullis ("plaintiff") pled guilty to falsifying travel expenses in connection with his business, in violation of 18 U.S.C. § 1001, which carries a maximum term of imprisonment of five years. As a consequence, plaintiff was prohibited from possessing firearms by 18 U.S.C. § 922 (g)(1), which provides in relevant part that: "[i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to possess any firearm or

violent crime. Therefore, the Committee has included language in the bill which prohibits the use of funds for ATF to investigate and act upon applications from relief from Federal firearms disabilities.

S. Rep. No. 353, 102nd Cong., 2d Sess. 77 (1992); *accord* S. Rep., No. 103-106, 103d Cong., 1st Sess. 20 (1993) (explaining that it was imposing a ban on ATF investigations because a decision to grant relief "could have devastating consequences for innocent citizens if the wrong decision is made."). Instead, Congress determined that the ATF's scarce resources "would be better utilized" on more pressing matters, such as "crack[ing] down on violent crime." S. Rep. No. 103-106, 103d Cong., 1st Sess. 20 (1993); S. Rep. No. 102-353, 102d Cong., 2d Sess. 19–20 (1992). In reenacting the ban for the fourth consecutive year, Congress reemphasized this point, stating, "those who commit felonies should not be allowed to have their right to own a firearm restored. . . . There is no reason to spend the Government's time or taxpayer's money to restore a convicted felon's right to own a firearm." H.R. Rep. No. 104-183, 104th Cong., 1st Sess. 15 (1995).[3] Given this history, it is unreasonable to believe that

---

[3] *See also* 142 Cong. Rec. S. 12164 (Oct. 19, 1996) (statement of Sen. Simon). In the context of the 1996 version of the Appropriations Act, Senator Simon, who along with Senator Lautenberg, proposed the provision barring the ATF from processing applications for the removal of firearms disabilities in1992, and advocated its inclusion in each following year, stated as follows:

In [Rice ], the Third Circuit Court of Appeals found that the current funding prohibition does not make clear congressional intent to bar all avenues of relief for convicted felons. By their reasoning, since ATF is unable to consider applications for relief, felons are entitled to ask the courts to review their applications.

This misguided decision could flood the courts with felons seeking the restoration of their gun rights, effectively shifting from ATF to the courts the burden of considering these applications. Instead of wasting taxpayer money and the time of ATF agents, which could be much better spent on important law enforcement efforts ... we would now be wasting court resources and distracting the courts from consideration of serious criminal

tendency toward violence or use of drugs and alcohol.[2] These institutional disadvantages make it highly unlikely that Congress intended district court to review an applicants dangerousness to society in the first instance. Nor would the costs to the courts in making an investigation be less than the costs to the ATF. They might well be greater since there would be no investigation or testimony by trained agents for the court to rely on.

Finally, the legislative history only serves to further reinforce the conclusion that Congress did not intend to modify § 925(c) to permit de novo judicial review of applications for the reinstatement of firearm privileges. As observed in *McGill,* 74 F.3d at 67, in a report to the Senate, the Appropriations Committee explained why it first withheld funds in the 1993 Appropriations Act for ATF action on applications for § 925(c) relief:

> After ATF agents spend many hours investigating a particular applicant[,] they must determine whether or not that applicant is still a danger to public safety. This is a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made. The Committee believes that the approximately 40 man-years spent annually to investigate and act upon these investigations and applications would be better utilized to crack down on

---

[2]The United States emphasized this point in its Motion for Reconsideration before the district court, pointing out that in connection with its investigation, ATF would interview: the applicant, the listed character references, independently developed references, employers, members of the community and neighborhood where the applicant lives, the applicant's probation officers, and other law enforcement officers. The ATF would also conduct a law enforcement records check. Based on all of this accumulated information the ATF would determine whether or not relief should be granted based on public safety and public interest concerns. *See, e.g., Smith v. Brady*, 813 F. Supp. 1382, 1383–1384 (E.D. Wis. 1993) (describing the investigations the ATF conducted pursuant to § 925(c)). Clearly this may result in a very different picture than that gleaned solely from information hand selected by an applicant.

ammunition." Plaintiff, who is apparently an avid hunter, sought to remove the firearm restrictions imposed on him by § 922 (g)(1). Accordingly, plaintiff obtained legal counsel, and in October of 1996, requested an application from the ATF for relief from his firearms disabilities pursuant to 18 U.S.C. § 925(c). The ATF responded that it was unable to even provide plaintiff with an application due to language Congress inserted in an appropriations act, which forbad the ATF from using any appropriated funds to evaluate or process such applications.

Undeterred, plaintiff filed an action in the district court seeking the restoration of his civil rights, or in the alternative, the removal of his federal firearm disability under § 925(c). The district court denied plaintiff's petition without prejudice, stating that plaintiff must first exhaust his administrative remedies by submitting an application made pursuant to § 925(c) to the ATF at least two years after the termination of his probation. Plaintiff again wrote the ATF on October 9, 1997, and was again told that the agency was not accepting applications.

In January of 1998, plaintiff filed this action for the restoration of his civil rights, or in the alternative, for removal of his federal firearm disability. The United States argued that the district court was without jurisdiction to consider plaintiff's request. The district court disagreed, concluding that Congress' appropriations acts did not suspend the judicial relief available under § 925(c). The court referred the merits of plaintiff's petition to a magistrate judge "to develop a record, make any factual findings, and make a recommendation . . . regarding the relief sought." The magistrate judge reviewed the Presentence Investigation Report prepared in 1994 at the time of plaintiff's conviction, letters and recommendations from five unrelated persons supplied by plaintiff, and consulted with the probation department to determine if plaintiff had any intervening criminal activity. After considering this information, the magistrate judge concluded that plaintiff was not likely to

endanger public safety and that granting plaintiff's requested relief was not contrary to public interest.

The district court reviewed the magistrate judge's Report and Recommendation and found that the magistrate judge had adequately considered all factors other than plaintiff's mental health. Accordingly, the district court required plaintiff to submit to an examination by a psychologist. The district court then referred consideration of the resulting mental health report to the magistrate judge, who again concluded that plaintiff's firearm disability should be removed. The district court accepted the magistrate judge's Report and Recommendation and ordered the removal of plaintiff's firearm disabilities pursuant to § 925(c). The United States brought this timely appeal.

## II.

The United States contends that the language and legislative history of § 925(c) and Congress's appropriations acts show that in withdrawing funding from ATF investigations under § 925(c), Congress meant to suspend the provision's operation in its entirety. We review the district court's determination of its subject matter jurisdiction de novo. *See, e.g., Michigan Peat v. Environmental Protection Agency*, 175 F.3d 422, 427 (6th Cir. 1999).

We begin, as in all cases of statutory interpretation, with the language of the statute itself. Section 925(c) allows the Secretary of the Treasury to grant relief from the firearm disabilities imposed by § 922(g), stating:

> A person who is prohibited from possessing, . . . firearms or ammunition may make application to the Secretary for relief from the disabilities imposed by Federal laws . . ., and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.

miscarriage of justice, it does not permit a district court to conduct a de novo review of an ATF denial. In fact, every circuit to address the matter has concluded that a district court should only review ATF denials to determine if the decision was arbitrary and capricious. *See Bagadonas v. ATF*, 93 F.3d 422, 425 (7th Cir. 1996); *Bradley v. ATF*, 736 F.2d 1238, 1240 (8th Cir. 1984); *Kitchens v. ATF*, 535 F.2d 1197, 1199-1200 (9th Cir. 1976); *see also Dunlap v. ATF*, No. 89-5794, 1990 WL 31736 (6th Cir. Mar 22, 1990) (unpublished). Thus, we conclude from the plain text of § 925(c) that Congress suspended the provision in its entirety when it prohibited the ATF from taking any action on applications made pursuant to § 925(c), as the statute makes no provision for de novo review by a district court. *See McHugh v. Rubin*, No. 99-6274, 2000 WL 95540 at *5–*8(2d Cir. July 11, 2000); *Burtch*, 120 F.3d at 1090.

Even if there were any doubt concerning Congress' intent, the practicalities of conducting the requisite investigation only serve to reinforce the conclusion that Congress intended to suspend § 925(c)'s operation. As the United States argues, the only way to reliably determine whether a convicted felon may safely be entrusted with a firearm pursuant to § 925(c) is to conduct extensive field investigations, including interviews of family, friends, neighbors, and coworkers. While district courts are well equipped to make credibility judgments and factual determinations, they are without the tools necessary to conduct a systematic inquiry into an applicant's background. An applicant will likely provide the district court only with contacts who will supply positive information concerning the applicant's record and reputation. Thus, as in the case at bar, the court would only be able to conduct a very one sided inquiry, relying largely on letters of recommendation and testimony from individuals hand selected by an applicant. Unlike the ATF, the court cannot canvas the circle of neighbors and acquaintances who may have negative information concerning such things as the applicant's

decisions permitted by 5 U.S.C. § 706(2)(A), and the relevant legislative history, concluding that it was "aware of no alchemy capable of transforming review of the ATF's decision under § 706 into the relief the plaintiff seeks—plenary adjudication of his application by the district court." *Id*. at *7.

We agree with the Second Circuit that the statue contemplates judicial review of the discretion exercised by the Secretary in denying an application, not independent judicial discretion exercised in a de novo review of an application. As the *McHugh* court emphasized, § 925(c) states that "[a]ny person whose application for relief from disabilities is *denied* by the Secretary may file a petition with the United States district court for the district in which he resides for a *judicial review of such denial*." 18 U.S.C. § 925(c) (emphasis added). It is true that Congress has not specifically addressed the judiciary in any of the appropriations acts dealing with § 925(c). However, by prohibiting the ATF from using appropriated funds to process applications, Congress has constrained the ATF from issuing the type of denials mentioned in the statute. One could argue that by refusing to process applications, the ATF is effectively denying relief, however the remedy in such a situation is not review by a federal court. Rather, as the United States points out, under 5 U.S.C. § 706, a court reviewing agency actions is only authorized to: (1) compel agency action unlawfully withheld or unreasonably delayed, or (2) invalidate agency actions and findings that are unlawful. Given Congress's explicit instruction that the ATF should not spend any appropriated funds to process applications for the removal or firearm disabilities, plaintiff could hardly argue that the ATF has acted unlawfully or unreasonably in failing to process his application. Because Congress clearly has the power to prevent the ATF from acting on any applications made pursuant to § 925(c) if it chooses, there is no agency action for a federal court to compel or review.

Further, while the statute permits district courts to supplement the record before it if necessary to prevent a

Any person whose application for relief from disabilities is denied by the Secretary may file a petition with the United States district court for the district in which he resides for a judicial review of such denial. The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice . . . .

18 U.S.C. § 925(c). The Secretary of the Treasury delegated authority to determine whether the granting of relief would be contrary to the public interest to the ATF, which conducted the necessary background checks and investigations. *See* 27 C.F.R. § 178.144. However, for each fiscal year since 1992, Congress has enacted an appropriations bill which states that "none of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. § 925(c)."[1] As a consequence, the ATF is effectively prohibited from processing applications for relief under § 925(c).

Congress, through appropriations acts, has the power to suspend, amend, or repeal a statute, so long as it does so clearly. *See Robertson v. Seattle Audubon Soc.*, 503 U.S. 429, 440, 112 S. Ct. 1407, 1414, 118 L. Ed. 2d 73 (1992); *United States v. Dickerson*, 310 U.S. 554, 555, 60 S. Ct. 1034, 1035,

---

[1] *See* Treasury, Postal Service, and General Government Appropriations Act, 2000, Pub. L. No. 106-58, 113 Stat. 430 (1999); Treasury, Postal Service, and General Government Appropriations Act, 1999, Pub. L. No. 105-277, 112 Stat. 2681 (1998); Treasury, Postal Service, and General Government Appropriations Act, 1998, Pub. L. No. 105-61, 111 Stat. 1272, 1277 (1997); Treasury, Postal Service, and General Government Appropriations Act, 1997, Pub. L. No. 104-208, 110 Stat. 3009, 3009-319 (1996); Treasury, Postal Service, and General Government Appropriations Act, 1996, Pub. L. No. 104-52, 109 Stat. 468, 471 (1995); Treasury, Postal Service, and General Government Appropriations Act, 1995, Pub. L. No. 103-329, 108 Stat. 2382, 2385 (1994); Treasury, Postal Service, and General Government Appropriations Act, 1994, Pub. L. No. 103-123, 107 Stat. 1226, 1228 (1993); Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub. L. No. 102-393, 106 Stat. 1729, 1732 (1992).

84 L. Ed. 1356 (1940). The district court recognized this fact and plaintiff does not argue to the contrary. The question that must be answered then is what was Congress' intent in precluding the ATF from spending funds on investigating or acting upon applications for relief under § 925(c). *See Dickerson*, 310 U.S. at 555–62, 60 S. Ct. 1034–38 (reviewing an appropriations act and the relevant legislative history to ascertain Congress's intent); *United States v. Mitchell*, 109 U.S. 146, 150, 3 S. Ct. 151, 153, 27 L. Ed. 887 (1883) (analyzing the effects of an appropriations act and stating that "[t]he whole question depends on the intention of Congress as expressed in the statutes").

Plaintiff does not dispute that through its appropriations measures, Congress intended to suspend all relief available through the ATF. However, plaintiff asserts that in doing so, Congress left the judiciary's role untouched. The district court agreed with plaintiff's argument and concluded that Congress had failed to show a clear intent to repeal § 925(c) in its entirety or to preclude judicial review of the ATF's "refusal" to grant relief from firearm disabilities.

While it is an issue of first impression in this circuit, the question of whether district courts retain subject matter jurisdiction to consider a plaintiff's petition for relief under § 925(c) has been addressed by several other circuits. *See McHugh v. Rubin*, No. 99-6274, 2000 WL 955420 (2d Cir. July 11, 2000); *Owen v. Magaw*, 122 F.3d 1350 (10th Cir. 1997); *Burtch v. United States Dept. of the Treasury*, 120 F.3d 1087 (9th Cir. 1997); *United States v. McGill*, 74 F.3d 64 (5th Cir. 1996); *Rice v. United States*, 68 F.3d 702 (3d Cir. 1995). Although the circuits have used slightly different reasoning, the only court to conclude that the district court retains subject matter jurisdiction is the Third Circuit in *Rice*, the case primarily relied on by the district court in the case at bar.

In *Rice*, the earliest circuit case, the court recognized that Congress could use appropriations acts to amend or repeal substantive legislation, and further that, subject to

constitutional restraints, it could preclude judicial review of administrative action. *See Rice* 68 F.3d at 707. However, the court observed that in order to do so, Congress' intention must be clearly stated. *See id.* With little explanation, the court stated that it did not believe that Congress' appropriation acts evinced a clear intent to repeal § 925(c) or to preclude federal courts from exercising jurisdiction to review ATF denials of relief from federal firearms disabilities. *See id.*

The other four circuits which have examined the issue concluded that Congress' appropriation acts rendered federal courts without subject matter jurisdiction to consider petitions for the restoration of firearms § 925(c) petitions. *See McHugh,* WL 955420 at *1; *Owen,* 122 F.3d at 1350; *Burtch*, 120 F.3d at 1087; *McGill*, 74 F.3d at 64. The Second Circuit is the most recent court of appeals to examine the issue of the subject matter jurisdiction conferred by § 925(c), addressing the question in *McHugh v. Rubin*. Noting that the plaintiff's application had never been denied by the ATF, the court observed that: "[t]he federal district courts are no more empowered than is the ATF to review individuals' applications for relief from federal firearms disabilities. Section 925(c) makes an agency 'denial' of an application a predicate to district court jurisdiction, and no such denial has been issued here." *Id*. at *5. Applying the rule that Congress has allocated initial review to an administrative body where such intent is fairly discernible in the statutory scheme, *see id*. (citing and quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 114 S. Ct. 771, 127 L. Ed. 2d 29 (1994)), the court held that Congress had made such an allocation. It pointed out that: (1) section 925(c) does not grant freestanding relief, but rather requires a person to apply to the Secretary, who may grant such relief; (2) the standard for granting relief is worded so broadly as to connote administrative agency decision making; (3) section 925(c) only permits district courts to consider new evidence where failure to do so would result in a miscarriage of justice. The court then considered the structure of the statute and appropriations acts, the scope of judicial review of agency