ROGERS, J., delivered the opinion of the court in which SUHRHEINRICH, J., joined. CLAY, J. (pp. 730-36), delivered a separate dissenting opinion.
OPINION
ROGERS, Circuit Judge.
Federal law generally bars both state-convicted and federally-convicted felons from possessing firearms, unless (among other conditions) their civil rights have been “restored.” The Supreme Court has held that whether a felon’s civil rights have been restored must be determined under the law of the convicting jurisdiction. Beecham v. United States, 511 U.S. 368, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994). In rejecting the argument that a state’s restoration of the civil rights of a federal felon was sufficient to lift the disability under the federal statute, the Supreme Court avoided the arguably anomalous result that a convicted felon’s federal firearm disability would depend on the state in which he was physically present when he possessed the firearm. A federal statute was in place that provided a means for a felon to get his firearm disability lifted. Since then, Congress has rendered inoperative the federal statutory provision directly addressing the lifting of the firearms disability based on a felony conviction. Now Billy Walker, a federal felon residing in Tennessee who has had his civil rights fully restored under Tennessee law, asserts that his Tennessee restoration of rights, because of the federal law effects of that restoration, in conjunction with certain longstanding federal statutory ahd constitutional provisions, leads to the conclusion that federal law has restored his rights sufficient to lift the disability. If so, the argument could have been made back when the Supreme Court decided Beecham, presumably leading to a different result in that very case. That possibility, especially in light of Congress’s subsequent legislation to limit the lifting of federal firearms disability for federal felons, should give us pause before holding that a state restoration of rights after all does result in a lifting of federal, firearm disability. Such a holding would raise intractable issues about which state’s restoration of rights applies to a federal felon’s possession of a firearm. Although a lawyer-like argument can be made to that effect, in the end a careful reading of the federal statute does not lead to such a strange result.
Walker argues that the relevant civil rights for firearm-disability-lifting purposes are the right to vote, the right to serve on a jury, and the right to hold government office. When these rights are restored at the state level, the argument goes, federal law in various ways permits the exercise of the same three civil rights at the federal level, thus meeting the federal statutory standard. The argument, however, works at best only for one of the three rights, and therefore is not sufficient to constitute a federal restoration of federal civil rights (plural) to warrant lifting the firearm disability.
The relevant facts are not in dispute. In 1987, Walker was convicted on multiple *722 nonviolent felony charges in federal court located in Tennessee. These convictions rendered him subject to the federal ban on possession of firearms by a convicted felon under the Gun Control Act of 1968. See 18 U.S.C. §§ 921(a)(20), 922(g)(1). As a result of his status as a felon, Walker also lost certain rights under the law of Tennessee, where he resided, including the right to vote, the right to hold state office, and the right to serve on a state jury; this had consequences for his federal law rights,- including the right to serve on a federal jury. Tenn.Code Ann. § 40-20-112 (loss of right to vote); § 40-20-114 (loss of right to hold public office); § 22-1-102 (loss of right to serve on a state jury); 28 U.S.C. § 1865 (loss of right to serve on a federal jury).
Recently, Walker set out to restore his civil rights and regain the right to possess firearms. In June 2010, Walker obtained a Tennessee state court order ruling that he “is eligible to have all civil and citizenship rights restored, including, without limitation, the right to vote, the right to serve on a jury, and the right to hold an office trust,” and ordering Walker’s “civil and citizenship rights ... restored pursuant to Tenn.Code Ann. § 40-29-105.” The same court issued a second order on March 22, 2012, confirming the restoration of rights in the prior order, and clarifying that Walker “shall have the explicit right to bear and possess firearms.”
In January 2013, Walker attempted to purchase a firearm at Gander Mountain in Jackson, Tennessee, but was prevented from doing so. When Walker appealed to the Tennessee Bureau of Investigation, he received an explanation that he was denied authorization because he was listed as a disqualified person in the background check database maintained by the Federal Bureau of Investigation.
Walker thereafter filed suit in the present action, seeking a declaratory judgment that his civil rights and his right to possess firearms have been restored in full under federal law. The district court subsequently granted the government’s motion for judgment on the pleadings and denied Walker’s motion for summary judgment. Walker appeals.
Walker was originally prevented from possessing firearms by 18 U.S.C. § 922(g), which prohibits “any person ... who has been convicted ... of a crime punishable by imprisonment for a term exceeding one year ... [from] possessing] ... any firearm or ammunition.” Walker would obviously fall under this statute, except that, under 18 U.S.C. § 921(a)(20), “[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter,” subject to conditions not at issue here. Walker argues that because his civil rights have been restored under Tennessee law, they have been restored for purposes of this statute.
Because Walker was convicted in federal court, the restoration of his rights under Tennessee law is not in itself enough. Presented with factual circumstances materially indistinguishable from the present case — federal felons whose rights had been restored in the states where they resided — the Supreme Court held that “whether a person has had civil rights restored ... is governed by the law of the convicting jurisdiction.” Beecham, 511 U.S. at 371, 114 S.Ct. 1669. The Court reasoned that the statute expressly provided that what constitutes a conviction is “determined in accordance with the law of the jurisdiction in which the proceedings were held,” and that the exemption clause provides that a conviction for which civil rights have been restored “shall not be *723 considered a conviction.” Id. The Court noted that a different conclusion would require the Court “to come up with a special choice-of-law principle for the exemption clause.” Id. (One of the two district courts below in Beecham had applied the law of the state in which the federal convicting court had sat, while the other had applied the law of the state in which felon had possessed the firearm. Id. at 370, 114 S.Ct. 1669.) The Court rejected an argument that Congress would not have wanted the civil rights restoration exemption to be determined by federal law because there was no federal procedure of restoring civil rights to a federal felon. The Court rejected this argument because Congress did not intend that felons convicted in every jurisdiction have access to all the procedures (pardon, expungement, set-aside, and civil rights restoration) specified in the exemption. Id. at 372-73, 114 S.Ct. 1669. Thus the Court did not need to reach the argument in favor of the felons that a federal felon cannot have his civil rights restored under federal law. Id. at 373 n. *, 114 S.Ct. 1669.
In determining whether Walker’s “civil rights” have been restored, precedent indicates that we should look to three civil rights in particular: “the rights to vote, to serve on a jury and to seek and hold public office.” United States v. Cassidy, 899 F.2d 543, 550 (6th Cir.1990); see Logan v. United States, 552 U.S. 23, 28, 128 S.Ct. 475, 169 L.Ed.2d 432 (2007). Along with the parties, moreover, we assume that in this context the relevant rights are to vote in federal elections, to serve on federal court juries, and to seek and hold federal office. At most one of these has been “restored” under federal law, and that is not enough.
First, we assume for purposes of this appeal that Walker’s right to serve on a federal jury has been restored under federal law. Under 28 U.S.C. § 1865, the statute defining eligibility for federal jury service, a person meeting other statutory requirements can serve on a federal jury “unless he ... has been convicted in a State or Federal court of record of a crime punishable by imprisonment for more than one year and his civil rights have not been restored.” 28 U.S.C. § 1865(b)(5). Assuming that restoration of civil rights in this statutory context refers to the restoration of civil rights in one’s state of residence, Walker has had his right to serve on a federal jury restored under federal law. Walker’s conviction placed him within the exclusion from federal jury service in the statute, and the restoration of his civil rights under Tennessee law arguably placed him within the exception to the exclusion. Federal law explicitly provides a particular condition under which felons may, in spite of their convictions, serve on federal juries, and Walker has, it appears, met that condition. It thus appears that Walker has had his right to serve on federal juries restored under federal law, albeit by cross-reference to state law. Of course if the language of § 1865(b)(5) were limited in the way that similar language in § 921(a)(20) was limited in Beecham, the statute might be read to mean “and his civil rights have not been restored by the convicting jurisdiction.” In that case, we might be faced with interpreting circular provisions: whether a civil right is restored under federal law would depend (at least in part) on whether the civil right was restored under federal law. We need not resolve this issue, however, as the other two relevant rights have not been “restored,” and one alone is not enough.
Second, Walker’s right to seek and hold public office has not been restored, because he was never deprived of that right to begin with. Neither Congress nor the states can add to the constitutional *724 qualifications for holding federal elective office. Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995). Because the constitutional qualifications make no mention of convictions, under federal law, Walker could always run for and hold federal public office. Walker’s conviction also had no effect on how federal law regulated his right to run for and hold state public office. The Supreme Court held in the context of the Armed Career Criminal Act that “an offender who lost no civil rights” has not had his civil rights restored for purposes of § 921(a)(20). Logan, 552 U.S. at 37, 128 S.Ct. 475. Having a thing “restored,” as that word is used in § 921(a)(20), implies that that thing was first lost. See Logan, 552 U.S. at 31, 128 S.Ct. 475. Thus Walker’s right under federal law to run for federal elected office was never restored because he never lost it.
Third, Walker’s right to vote in federal elections was not restored under federal law in the sense that the convicting jurisdiction (i.e., the United States), either by across-the-board legislation or by individual adjudication, determined that such a right should be returned to him. The best reading of § 921(a)(20) is that for a civil right to be restored, it must be restored as a result of an evaluation by the convicting jurisdiction of what the consequences of the conviction ought to be. That is not the case here. The provisions of federal law on which Walker relies provide general rules for voting rights that apply to felons to the same extent as to anyone else; the federal scheme does not address Walker’s conviction — or convictions in general — at all, and so it does not effect a restoration of Walker’s right to vote for purposes of § 921(a)(20).
The provisions of federal law on which Walker relies are the constitutional provisions relating to voting in House and Senate elections, both of which provide (with minor and inconsequential style variations) that “[t]he electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislature[s].” U.S. Const, art. I § 2; id. amend. XVII. This means that under federal law a person has the right to vote in elections for Congress so long as the state where that person resides permits him to vote in state legislative elections. Wesberry v. Sanders, 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). Thus Walker lost his federal right to vote in congressional elections when he was convicted because Tennessee, his state of residence, prohibited him from voting in Tennessee’s legislative elections. When Tennessee lifted that prohibition, Walker regained his federal right. These provisions of federal law are indifferent as to Walker’s status as a felon and even as to the reasons that Tennessee first denied and then restored Walker’s state legislative voting rights. Instead, Walker’s right to vote under federal law turns entirely on whether or not Tennessee permits him to vote.
Walker’s right to vote has not been restored under federal law, because the text of § 921(a)(20) must be read to require that the convicting jurisdiction’s civil rights scheme address an individual’s conviction in “restoring” that individual’s civil rights. Otherwise it is but an exercise of sterile logic to say that the federal law “restored” the right to vote. This gloss, moreover, is supported by the text. Strictly speaking, the question posed by § 921(a)(20) is not whether Walker’s civil rights were restored, but whether Walker’s “conviction [was one] ... for which ... [he] has had civil rights restored.” 18 U.S.C. § 921(a)(20) (emphasis added). Having civil rights restored is a property *725 not of the felon, as one might intuitively expect, but of the conviction. See Beecham, 511 U.S. at 371, 114 S.Ct. 1669. If the convicting jurisdiction grants a felon the right to vote without in any way considering his conviction or even convictions in general, then the felon’s right to vote is not restored for the conviction. Rather, “for which” implies that, for a civil right to be restored pursuant to the statute, the convicting jurisdiction must grant the felon the right to vote after some determination that the felon’s conviction ought no longer to prevent the felon from exercising the civil right.
Even if this requirement that the scheme restoring rights address the conviction is not the only plausible reading of “conviction ... for which ... [he] has had civil rights restored,” it finds support in the broader context in which that language appears. Section 921(a)(20) provides alternatives to the restoration of civil rights that all address an individual’s conviction: expunging a conviction, setting it aside, and pardon. . 28 U.S.C. § 921(a)(20). These are all legal acts that reflect a judgment by some state actor about whether particular consequences are appropriate responses to the felon’s crime. While these are all generally individualized judgments and restoration of civil rights need not be, it is reasonable to assume that Congress intended restoration of civil rights to be of a kind with its partners in the list in reflecting a determination by the convicting jurisdiction that particular consequences of a conviction ought no longer to be imposed. If, as this list suggests, Congress intended to use the convicting jurisdiction’s determination as a proxy for whether a felon is sufficiently trustworthy to be allowed to possess firearms, the convicting jurisdiction’s determination must somehow take the felon’s conviction into account to be meaningful.
This reading of the statute is supported by language in Logan, 552 U.S. 23, 128 S.Ct. 475, suggesting that when a convicting jurisdiction restores civil rights it grants a degree of forgiveness to the offender. In that case, Logan was convicted of being a felon in possession of a firearm and sentenced to the mandatory minimum 15-year term because he had three state convictions that qualified as felonies under 28 U.S.C. § 921(a)(20). Id. at 26, 128 S.Ct. 475. However, under the law of Wisconsin, the jurisdiction where those convictions took place, the convictions for which Logan was convicted “at no time deprived the offender of civil rights.” Id. Logan therefore claimed that his rights had been restored under Wisconsin law for purposes of § 921(a)(20), rendering the mandatory minimum 15-year sentence inapplicable. Id. The Supreme Court disagreed, holding that never losing one’s civil rights is not the same as having one’s civil rights restored. Id. The Court noted the context of the “civil rights restored” language: “In § 921(a)(20), the words ‘civil rights restored’ appear in the company of the words ‘expunged,’ ‘set aside,’ and ‘pardoned.’ Each term describes a measure by which the government relieves an offender of some or all of the consequences of his conviction.” Id. at 32, 128 S.Ct. 475. Thus, in requiring some affirmative government act, the Court described the restoration of civil rights as a government act that “extend[s] to an offender a measure of forgiveness,” and noted that Logan, and other offenders never deprived of their civil rights, receive no “token of forgiveness from the government.” Id. at 26, 32, 128 S.Ct. 475. Forgiveness always involves a consideration of the wrong committed. Indeed, without such a consideration, there would be little reason for Congress to defer to the convicting jurisdiction’s decision to restore civil rights to the convicted individual. *726 See id. at 37, 128 S.Ct. 475. If a decision not to deprive the convicted individual of civil rights in the first place is not sufficient in Congress’s eyes for a restoration, a decision to deprive and then grant civil rights for reasons only incidentally connected to the conviction should also be insufficient.
There is no token of forgiveness for Walker in the federal law’s treatment of his right to vote. That Walker regained the right to vote under federal law reflects no judgment in federal law regarding his conviction in particular or the voting rights of felons in general. Instead, Walker’s right to vote hinges entirely on a contingent consequence of his conviction: his loss of voting rights under Tennessee law as a Tennessee resident with a felony conviction. Walker would have retained the right to vote had he resided in a state that permitted felons to vote.[1] In contrast to the statute governing federal jury service, this deference to state rules is not part of a federal scheme specifically addressing the rights of convicted felons. Cf. 28 U.S.C. § 1865(b)(5). In the case of jury service, federal law asks first whether Walker is a felon and then whether Tennessee has restored his rights. When it comes to voting, however, federal law considers only whether Tennessee permits him tó vote and does not in any way consider his felony conviction.[2] Walker’s federal felony convictions are therefore not ones for which his right to vote has been restored under federal law, and indeed, he was never deprived of this right in the sense necessary for it to be able to be restored.
This conclusion is ■fully consistent with Caron, 524 U.S. at 313, 118 S.Ct. 2007, under which civil rights can be restored “by operation of law” rather than by an individual determination.' In that case, Caron, a three-time Massachusetts felon convicted of possessing firearms, argued at sentencing and on appeal that his civil rights had been restored under Massachusetts law and therefore his Massachusetts convictions were not predicate felonies for the ACCA’s mandatory minimum 15-year sentence. Caron had received no individual restoration; instead, his argument relied on the fact that Massachusetts law does not deprive felons of the right to vote, permits them to run for office upon completion of their sentences, and permits them .to serve on juries seven years after their convictions. United States v. Caron, 77 F.3d 1, 2 (1st Cir.1996) (en banc). Eventually, the en banc First Circuit held that the restoration of civil rights for purposes of § 921(a)(20) does not require individualized procedures. Id. at 5. The Supreme Court denied certiorari, and, when it decided a separate question on a subsequent appeal, confirmed this conclusion and noted the unanimous agreement of the Circuits that considered the issue. 524 U.S. at 313-14, 118 S.Ct. 2007. This is consistent with Logan. Massachusetts’ scheme for granting civil rights to felons functions as a token of forgiveness in the sense that it reflects a judgment about whether felons, as a general class, ought to have particular civil rights returned to *727 them after enough time has passed. The scheme is thus distinguishable from the constitutional provisions Walker relies on, which articulate the scope of a generalized voting right applicable to all citizens and do not reflect any judgment regarding the consequences of criminal convictions in particular. Forgiveness, under this interpretation of Logan, does not require an individualized pardon, but it does require consideration of the felon’s conviction and willingness to lighten the burdens imposed as a consequence of it.
Thus Walker appears to have had at most one of the Cassidy civil rights restored, a second was not restored because it was never lost, and a third was not restored within a fair reading of § 921(a)(20). This is not sufficient. First, the language of the statute refers to having multiple “civil rights” restored, not just one civil right. On the most natural interpretation of the statutory language, having only one civil right restored is insufficient. Second, even when other civil rights cannot be restored because they were not lost, having just one civil right restored is not functionally equivalent to having multiple restored. This is because the statute, as interpreted in Logan, defers to acts of forgiveness or rehabilitation by the convicting jurisdiction. Id. at 37, 128 S.Ct. 475. The restoration of a single civil right, as opposed to multiple civil rights, is insufficiently significant to suggest that Congress intended to defer to that also.
The restoration of civil rights as a whole reflects more trust than the restoration of a single civil right. Restoring a single civil right — the right to serve on a jury, for example — may be a decision guided primarily by administrative practicalities or by considerations unique to the context in which that right is exercised. Such a decision lacks both the symbolic and actual significance of a restoration of multiple civil rights, which suggests that a felon can function as a normal citizen in more than one institutional context. The judgment that a single civil right ought to be restored thus does not reflect the same degree of forgiveness as the restoration of multiple civil rights, and so it is not sufficient for purposes of § 921(a)(20).
Because Walker has had at most one of the Cassidy civil rights restored under federal law for purposes of § 921(a)(20), his felony conviction is not one “for which ... [he] has had civil rights restored,” § 921(a)(20), and so the firearms prohibition of § 922(g) still applies to him.
Acceptance of Walker’s argument, on the other hand, would require us to conclude that the Supreme Court simply did not look at the right laws in Beecham, when it held that a state restoration of civil rights was not sufficient to lift the firearm disability. The constitutional provisions regarding the right to run for federal office and to vote in federal elections referred to state law just as much in 1994 as now. And the statutory provision regarding federal jury duty was not materially different in 1994 from what it is today. See United States v. Arce, 997 F.2d 1123, 1127 (5th Cir.1993) (quoting — and upholding the constitutionality of— § 1865(b)(5)). Although we could say that a state restoration of civil rights is also a federal restoration because of- these provisions, the Supreme Court could easily have said the same — if true — in 1994. We are not so bold as to draw a conclusion that the Supreme Court was simply misled to look at the wrong law. Walker’s proposed interpretation would produce a practical result very similar to the one that the Supreme Court rejected in Beecham, albeit by a different legal route. In Beecham, the Supreme Court rejected circuit court interpretations of § 921(a)(20) that would have predicated the restoration of a feder *728 al felon’s civil rights on their restoration under state law. Beecham, 511 U.S. at 370-71, 114 S.Ct. 1669. Walker’s argument would indirectly predicate a federal felon’s civil rights on their restoration under state law. While this argument was not presented to the Court in Beecham, the Court was obviously aware of the federal law on voting and jury service on which Walker’s argument rests. See id. at 373 n. *, 114 S.Ct. 1669.
In the starred footnote in Beecham,[3] the Court indicated that it was not necessary to reach an argument that would support the felon that there was no available federal restoration of civil rights. (The Ninth Circuit had previously reasoned that the absence of a federal restoration indicated that Congress intended the state restoration to be sufficient. Id. at 372-73, 114 S.Ct. 1669.) The Court, as indicated above, did not reach the issue because the Court reasoned that, under the statute, the civil rights of a federal convict had to be restored under federal law for the exemption to apply regardless of whether the federal government provided for such a restoration. Apart from a citation of the federal provisions relied upon by Walker for a conclusion opposite to the one that was perceived to favor Beecham, nothing in the footnote suggests that a state restoration of state civil rights would by virtue of those federal provisions result in a federal restoration of rights.
The Government in Beecham moreover ■ relied upon the difficulties that would occur if a state restoration of rights lifted the federal firearm disability, difficulties that would apply just as strongly if Walker’s argument is adopted;
The interpretation of the statute proposed by petitioners would lead to intractable problems of construction. Petitioners do not suggest which State’s law should be consulted to determine whether a federal felony is to be given continuing effect, and there is nothing in the statute that gives any hint of which -State’s law should control — the State of the defendant’s residence, the State of the defendant’s prior federal felony conviction, the State where the defendant commits the new firearms offense, or some other State. Since that question would be such an obvious one if state law were intended to control the construction of federal felonies, the fact that the statute provides no answer casts serious doubt on petitioners’ construction.
Brief for Appellant, Beecham v. United States, 511 U.S. 368, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994) (No. 93-445), 1994 WL 96876 at *8.
The Government elaborated on this concern as follows:
If the term “restoration of civil rights” is not understood to refer to a restora *729 tion by the convicting jurisdiction, it would mean that if State A restored a defendant’s civil rights following his conviction in State B, the State B conviction would no longer qualify as a conviction under federal law. That would be so even if State B regarded its own conviction as still perfectly valid and still sufficient to bar the defendant from possessing firearms in that State. Carried to its logical end, petitioners’ interpretation of Section 921(a)(20) means that the State of Wyoming could render convictions from every other State and from federal courts unusable as “convictions” under the Gun Control Act if Wyoming law restored civil rights to persons convicted in other jurisdictions as soon as they were released from custody....
[Petitioners] insist (Br. 12-13) that there is no textual basis for construing the phrase “restoration of civil rights” as limited to the convicting jurisdiction. But if the restoration of civil rights is not limited to the convicting jurisdiction, there is no textual basis for deciding what other jurisdiction’s law to consult in determining whether a restoration of civil rights has the effect of removing the federal firearms disability. To suggest that the “restoring” jurisdiction should be the State in which the federal conviction was obtained, or the State in which the defendant was residing when he committed the subsequent federal firearms violation, or the State in which the defendant was charged with the federal firearms violation, requires a complete departure from the text of the statute to which petitioners claim strict allegiance.
Id. at *11-12.
The Supreme Court adverted to these arguments briefly in its opinion, but noted that applying federal law where the conviction is federal would avoid the need to come up with a special choice of law rule. Beecham, 511 U.S. at 371, 114 S.Ct. 1669. But accepting Walker’s argument in this case would return us to the very quandary that the Government raised in Beecham and that the Supreme Court thought it avoided: which state’s restoration is the operative one, and does it apply nationally?
In addition, Congress’s subsequent treatment of 28 U.S.C. § 925(c), a separate avenue for felons to regain their gun possession rights, lends support to a limited interpretation of “restoration.” Section 925(c) provides a mechanism for felons convicted in any jurisdiction to petition to the Attorney General (or, in prior versions of the law, the Secretary of the Treasury) for a restoration of the right to possess firearms. The Attorney General (and previously the Secretary of the Treasury) has delegated this responsibility to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). Since 1992, however, Congress has, in annual appropriations bills, prohibited the ATF from acting on such petitions. See Mullis v. United States, 230 F.3d 215, 217 (6th Cir.2000). The legislative histories of these appropriations provisions make it clear that Congress believed that “those who commit felonies should not be allowed to have their right to own a firearm restored.” H.R.Rep. No. 104-183, at 15 (1995); see 142 Cong. Rec. S. 12164 (Oct. 19, 1996) (statement of Sen. Simon); Mullis, 230 F.3d at 220 & n. 3.
This subsequent intent to prevent felons from possessing firearms suggests that Congress did not view § 921(a)(20) as offering felons who have not been rehabilitated a way to regain firearms rights. Of course these appropriations measures blocking § 925(c) cannot entirely prevent felons from having their firearms rights restored because they could still obtain a pardon, expungement, or restoration of civil rights from the convicting jurisdiction *730 under § 921(a)(20). The appropriations measures do not explicitly address that portion of the statute. But the fact that Congress broadly intended to prevent felons from possessing firearms and, guided by that intent, blocked implementation of § 925(c) without mentioning § 921(a)(20) suggests ■ that Congress did not view § 921(a)(20) as a remaining avenue for non-rehabilitated felons to regain their right to possess firearms. If § 921(a)(20) restored firearms rights to felons who had lost and regained civil rights without any consideration of their crimes by the convicting jurisdiction, then Congress’s failure to address this provision would be difficult to explain in light of Congress’s stated general intent to prevent felons from possessing firearms.
For the foregoing reasons, the judgment of the district court is affirmed.

. Currently, Maine and Vermont permit resident felons to vote, even while they are incarcerated. See Me.Rev.Stat. 21-A, § 112(14); Vt. Stat. Ann. 17, § 2121.

. This analysis does not necessarily require that a jurisdiction’s scheme address a conviction explicitly. For example, it is possible, although we do not consider* the question here, that a statute that uses general language to repeal a prohibition on felons voting would restore the voting rights of the felons affected. In that case, the legislature’s act might be understood to address the felons’ convictions by repealing the statute that had previously addressed the convictions.

. The footnote in full reads:
We express no opinion on whether a federal felon cannot have his civil rights restored under federal law. This is a complicated question, one which involves the interpretation of the federal law relating to federal civil rights, see U.S. Const. Art. I, § 2, cl. 1 (right to vote for Representatives); U.S. Const. Arndt. XVII (right to vote for Senators); 28 U.S.C. § 1865 (right to serve on a jury); consideration of the possible relevance of 18 U.S.C. § 925(c) (1988 ed., Supp. IV), which allows the Secretary of the Treasury to grant relief from the disability imposed by § 922(g); and the determination whether civil rights must be restored by an affirmative act of a Government official, see United States v. Ramos, 961 F.2d 1003, 1008 (C.A.l), cert. denied, 506 U.S. 934, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992), or whether they may be restored automatically by operation of law, see United States v. Hall, 20 F.3d 1066 (C.A.10 1994). We do not address these matters today.
Id. at n. *.